# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

**DALE LEO BISHOP**                                             **PETITIONER**

**V.**                                    **CIVIL ACTION NO.: 1:04CV319-MPM**

**CHRISTOPHER EPPS, ET AL.**                                    **RESPONDENTS**

## MEMORANDUM OPINION

Petitioner, Dale Leo Bishop, a death-row inmate currently incarcerated at Parchman

Penitentiary, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254,

seeking to challenge his otherwise final conviction and death sentence for capital murder.

## Background[1]

On December 10, 1998, Petitioner, Dale Leo Bishop, was drinking beer at the Saltillo,

Mississippi, apartment of Ricky Myhand and Rachel Dobbs.  Present with Petitioner at the

apartment were Marcus James Gentry, Jessie Johnson ["Jessie"], Cory Johnson, and Charlie

Rakestraw.  Having decided to go purchase more beer, Jessie asked Myhand to go to the store

with him.  Myhand agreed, and Jessie, Petitioner, and Gentry left Myhand's apartment in

Gentry's vehicle.  Upon reaching the store, they found it closed, and Gentry began driving back

to Myhand's apartment.  On the ride back to the apartment, Jessie, who was seated in the front

passenger seat, got into a verbal altercation with Gentry, alleging that Gentry had "ratted on"

Jessie's brothers to police regarding some grand larceny and burglary charges.  Gentry denied

Jessie's accusations, and Jessie struck Gentry between the eyes with a hammer that had been

---

[1] The background facts in this portion are taken from the statement of facts in the
Mississippi Supreme Court's opinion in *Bishop v. State*, 812 So.2d 934 (Miss. 2002).

resting on the floorboard.[2]   The hammer, a 28-ounce Vaughn California framing straight claw, was brought on the trip by Petitioner, a carpenter by trade.  In his statement to police, Petitioner stated he brought the hammer on the trip under the pretense of needing it to work on his truck.  After the car coasted to a stop, Petitioner, who was seated behind Gentry, grabbed Gentry in a headlock and struck him while Jessie hit Gentry again with the hammer.  Gentry was moved to the passenger seat, and Jessie took control of the vehicle, turning it down a dirt road.  When Jessie stopped the car, Gentry ran from the vehicle.  Jessie told Petitioner to get Gentry and bring him back.  Petitioner complied, returning with Gentry approximately five minutes later, and Gentry was forced to his knees in front of the car.

Petitioner and Jessie kicked Gentry numerous times, and Jessie struck Gentry several times with the hammer.  At some point during the beating, Petitioner asked Myhand to hold Gentry while Petitioner retrieved some beers for himself and Jessie.  When the beating finally ended, Petitioner dislodged his hammer from Gentry's throat, and Jessie and Petitioner drug Gentry's body into nearby bushes.   Jessie, Petitioner, and Myhand then left the scene to return to Myhand's apartment.  On the way to the apartment, Jessie and Petitioner talked about finding a shovel and burying Gentry's body.

Arriving back at Myhand's apartment, Jessie and Petitioner washed-off and were given clean clothes by Myhand.  When all of the visitors left the apartment, Myhand and Dobbs reported the crime to police.  Myhand took officers to the murder site, where Gentry's body was recovered.  Gentry's car was there, and a shovel was found nearby.  It is assumed Petitioner and

---

[2] In its opinion, the Mississippi Supreme Court noted that there existed a discrepancy as to whether Jessie initially hit Gentry with his hands or with the hammer.  *Bishop I*, 812 So.2d at 937 n.4.

Jessie fled the scene and hid in the woods when the police car arrived. The pair were finally apprehended on December 13, 1998, and were subsequently indicted for capital murder during the course of kidnapping. Petitioner and Jessie were separately tried.

Steven Hayne, M.D., a forensic pathologist, conducted Gentry's autopsy and testified at Petitioner's trial that there were 23 injuries to Gentry's head, neck, and hand, and that these injuries were produced either with a blunt object with enough force to break the skin or by a sharp-edged object such as a claw hammer. Dr. Hayne testified the injuries to the hands, forearms, and fingers were consistent with defensive wounds, and that Gentry died from "cranial cerebral trauma, secondary to blunt force trauma to the head, and he also died from lacerations, tears of the voice box, with aspiration of blood." Petitioner did not testify at trial, but he did give a statement to police on December 13, 1998, which was admitted into evidence.

Petitioner was found guilty of capital murder with an underlying felony of kidnapping. Petitioner waived sentencing by a jury, and Lee County Circuit Judge Frank A. Russell sentenced Petitioner to death, finding beyond a reasonable doubt that Petitioner contemplated the use of lethal force, and that the crime was especially heinous, atrocious, or cruel.

Petitioner pursued a direct appeal, which was denied by the Mississippi Supreme Court on February 12, 2002. *Bishop v. State*, 812 So.2d 934 (Miss. 2002), *cert denied*, 537 U.S. 976 (2002) ("*Bishop I*"). Petitioner filed his application for state post-conviction relief on April 18, 2003. The court denied Petitioner's motion to supplement or amend his petition, stating "absent any compelling reasons or circumstances, the Court intends to follow the prescribed time lines." *Bishop v. State*, 882 So.2d 135, 140 (Miss. 2004) ("*Bishop II*"). The court denied post-conviction relief on July 1, 2004, and rehearing was denied September 23, 2004. *Bishop II*, 882

So.2d 135, *cert. denied*, 534 U.S. 1189, 125 S.Ct. 1401, 161 L.Ed.2d 194 (2005).  Petitioner then

filed his petition for writ of habeas corpus with this Court on March 28, 2005, as amended

October 16, 2005. [docket entry. no. 18].

In his federal habeas petition, Petitioner raises the following claims of error:

**CLAIM I**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE
PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED
BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION WHERE THE PETITIONER
WAS NOT COMPETENT TO PROCEED AT HIS TRIAL OR
SENTENCING PROCEEDINGS**

**CLAIM II**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE
PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED
BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION WHERE THE PETITIONER
WAS DENIED HIS RIGHT TO A FAIR AND IMPARTIAL JUDGE AT
ALL STAGES OF THE PROCEEDINGS**

**CLAIM III**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE
PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED
BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION WHERE PREJUDICIAL
EVIDENCE WAS IMPROPERLY ADMITTED AT TRIAL**

**CLAIM IV**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE
EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FIFTH, SIXTH,
EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION AT THE PRE-TRIAL, TRIAL, AND SENTENCING
PROCEEDINGS AND ON APPEAL**

**CLAIM V**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO THE
EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE FIFTH, SIXTH,
EIGHTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES**

CONSTITUTION AT THE POST-CONVICTION PROCEEDINGS

**CLAIM VI**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE THE TRIAL COURT ERRED IN GIVING AN AIDING AND ABETTING INSTRUCTION**

**CLAIM VII**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE THE PETITIONER WAS PERMITTED TO WAIVE A SENTENCING JURY**

**CLAIM VIII**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE THE PETITIONER WAS DENIED A FAIR AND RELIABLE SENTENCING HEARING BY THE TRIAL COURT'S DENIAL OF FUNDS FOR A PSYCHOLOGICAL EXPERT**

**CLAIM IX**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE THE IMPOSITION OF THE DEATH PENALTY VIOLATES THE UNITED STATES SUPREME COURT'S DECISION IN TISON v. ARIZONA**

**CLAIM X**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHERE IT IS UNLAWFUL TO EXECUTE A PERSON WHO IS MENTALLY ILL**

**CLAIM XI**
**PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED**

**BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION WHERE THE PETITIONER'S
SENTENCE IS DISPROPORTIONATE TO THAT OF HIS MORE
CULPABLE CO-DEFENDANT**

**CLAIM XII
PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE
PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED
BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION WHERE PETITIONER
HAS BEEN SUBJECTED TO THE "DEATH-ROW PHENOMENON"
AND THE EXECUTION OF PETITIONER IN THIS CASE SERVES
NO LEGITIMATE PENOLOGICAL END**

**CLAIM XIII
PETITIONER WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE
PROCESS AND EQUAL PROTECTION AND RIGHTS GUARANTEED
BY THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS
TO THE UNITED STATES CONSTITUTION BY THE CUMULATIVE
EFFECT OF THE CONSTITUTIONAL VIOLATIONS SET FORTH IN
CLAIMS I THROUGH XII HEREIN**

## <u>Applicable Legal Standard</u>

Petitioner filed his federal habeas petition after April 24, 1996; therefore, the

Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"] governs review of his

claims. *See Penry v. Johnson*, 532 U.S. 782, 792, 121 S.Ct. 1910, 1918, 150 L.Ed.2d 9 (2001).

Under the AEDPA, claims adjudicated on their merits are analyzed depending upon whether the

determination of the state court is one of law, fact, or a mixture of the two. A federal court may

not grant a writ concerning a pure question of law or a mixed question of law unless the state

court conviction and/or sentence that is being challenged "resulted in a decision that was contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States." *See Hill v. Johnson*, 210 F.3d 481, 484-85 (5th Cir.

2000); 28 U.S.C. § 2254(d)(1). A decision is "contrary" to Supreme Court precedent if the state court "arrives at a conclusion opposite to that reached by the Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). An "unreasonable" application of law is one in which the state court identifies the correct legal principle but unreasonably applies it to the facts of the case. *Id.* at 413, 120 S.Ct. at 1523. This Court is without authority to grant habeas relief merely if it disagrees with a state court decision. *See Catalan v. Cockrell*, 315 F.3d 491, 493 (5th Cir. 2002) (holding habeas relief not granted merely because court independently concludes state court application of federal law incorrect).

Under the AEDPA, findings of fact are reviewed under § 2254(d)(2), which disallows the grant of the writ unless the decision of the state court "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(2). Factual issues decided by the State court are entitled to a presumption of correctness which the Petitioner may rebut by clear and convincing evidence. 28 U.S.C. § 2254 (e)(1).

The AEDPA also provides federal courts with a structure to dispose of claims that have not been adequately presented to a state court for review, i.e., unexhausted claims. Generally, in order to exhaust his remedies in state court and have his federal petition considered, a petitioner must present the substance of his claims to the highest court of the state in a procedurally proper manner. *See*, *e.g.*, *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1995); 28 U.S.C. § 2254(b)(1)(A). This requirement, grounded in comity and federalism, is considered a

"fundamental prerequisite to federal habeas relief." *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir. 1995); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999) ("Comity . . . dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief.").

Federal review of unexhausted claims by a state prisoner is limited by the procedural default doctrine. *See, e.g., Bagwell v. Dretke*, 372 F.3d 748, 755 (5th Cir. 2004). Procedural default "occurs when a prisoner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id.*, citing *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). The procedural default doctrine presumes that if a state court relies on a state procedural rule in reaching a decision, that bar is a state law ground which is independent of federal law and adequate to support the judgment. *See Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989). A petitioner wishing to rebut that presumption and avoid imposition of the bar on federal habeas review must demonstrate that the state rule is not strictly or regularly followed. *See Sones v. Hargett*, 61 F.3d 410, 416-417 (5th Cir. 1995).

A petitioner may receive federal review of a procedurally defaulted claim if he can demonstrate cause and prejudice for the default or that a miscarriage of justice would result from failure to review the claim. *See Coleman v. Thompson*, 501 U.S 722, 750, 111 S.Ct. 2546, 2565,.115 L.Ed.2d 640 (1991). A court may consider "cause" when a petitioner demonstrates that some factor external to his defense has impeded compliance with the procedural rule. *See Bagwell*, 372 F.3d at 756. A petitioner may demonstrate prejudice if he demonstrates that he

might not have been found guilty absent the error. *See*, *e.g.*, *United States v. Guerra*, 94 F.3d 989, 994 (5th Cir. 1996). The miscarriage of justice exception is only applicable to claims of factual innocence. *See, e.g., Sawyer v. Whitley*, 505 U.S. 333, 339 & n.5, 112 S.Ct. 2514, 2518-19, 120 L.Ed.2d 269 (1992). If neither cause and prejudice or a fundamental miscarriage of justice is shown, then the claim is procedurally defaulted and may be dismissed. *See Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006) (exception to the rule exists where petitioner shows cause for the default and actual prejudice as a result of the alleged constitutional violation or that application of the rule will result in a fundamental miscarriage of justice).

The AEDPA imposes the burden of obtaining an evidentiary hearing in federal court on the petitioner, and it also limits the circumstances in which an evidentiary hearing may be granted for those petitioners who fail to diligently seek to establish factual bases for their claims in state court. *See Williams*, 529 U.S. at 433-34, 120 S.Ct. at 1489 (prisoners at fault for deficiency in state court record must satisfy heightened standard to obtain evidentiary hearing); *Clark v. Johnson*, 202 F.3d 760, 765-66 (5th Cir. 2000), *cert. denied*, 531 U.S. 831 (2000); *McDonald v. Johnson*, 139 F.3d 1056, 1059 (5th Cir. 1998); 28 U.S.C. § 2254(e)(2).

## Preliminary Matter - Petitioner's State Post-Conviction Proceedings

The instant petition contains several claims that have not been presented to the State courts for review, and as such, are unexhausted. Petitioner seeks to persuade the Court that *de novo* review should be given to these claims that would otherwise be procedurally barred due to "an absence of available State corrective process," or a circumstance "that render[ed] [the State court corrective process] ineffective to protect the rights of the applicant" under 28 U.S.C. § 2254(b)(1)(B)(i) and 28 U.S.C. § 2254(b)(1)(B)(ii). (Pet.16). Petitioner asserts that the

Mississippi Supreme Court's refusal to allow him to amend his state post-conviction petition denied him due process of law, inasmuch as the time for filing his petition was shortened as a result of the decision in *Puckett v. State*, 834 So.2d 676, 677 (Miss. 2002), which held that the limitation period for purposes of filing a State post-conviction application begins to run on the date on which the mandate is issued. (Pet. 28). Petitioner argues that the decision in *Puckett* was an unforeseen interpretation of when the limitation period begins to run. *See Booker v. State*, 699 So.2d 132 (Miss. 1997) (limitation period runs from denial of rehearing on direct appeal) and *Lockett v. State*, 656 So.2d 68 (Miss. 1995) (limitation period runs from denial of rehearing following denial of petition for writ of certiorari).

On February 15, 2002, the Mississippi Office of Post-Conviction Counsel ["Office"] was appointed to assist Petitioner in his post-conviction proceeding, and the Office was directed to select counsel and file Petitioner's application for post-conviction relief within 180 days of the appointment of counsel. (Answer, Ex. E). Counsel was appointed on March 22, 2002, and Petitioner's application for post-conviction relief was filed on April 18, 2003, exactly one year from the date on which the mandate issued affirming Petitioner's direct appeal. Simultaneously filed with the post-conviction application was a motion for additional time to supplement and/or amend the petition. (See Post-Conviction Pleadings vol. I, No.: 2002-DR-00932-SCT, "Motion for Leave to Proceed in the Trial Court with a Petition for Post-Conviction Relief and Motion to Supplement and/or Amend the Petition"). Petitioner's motion to amend the post-conviction petition was denied. *See Bishop II*, 882 So.2d at 140. Petitioner's argument is that, due to the actions of the court in denying him additional time, any potential procedural defaults that might here be imposed against his claims should be excused due to his inability to raise such claims at

10

the State court level. Petitioner asserts the heavy workload of the Office, combined with the lack of qualifications of post-conviction counsel, denied him any possible redress to his constitutional violations. (Pet. Exhaustion Memo 5-7). Petitioner argues that he was deprived of due process of law by the retroactive effect of the decision in *Puckett*. (Pet. 31-32).

Respondents argue that post-conviction counsel was aware of the 180 day filing deadline set forth in Mississippi Rule of Appellate Procedure ("MRAP") 22, and a February 15, 2002, order informed counsel of the necessity of compliance. (Answer 35-36, Ex. E). Respondents note that Petitioner was given 392 days from the date counsel was appointed in which to file his petition. Aware of the 180 day deadline, Petitioner twice moved for and twice received extensions of time. It was only after the third request for an extension that relief was objected to, and the court denied time to amend.[3]

This Court is not persuaded that there was an absent or ineffective State corrective process that would excuse Petitioner's failure to exhaust due to the Mississippi Supreme Court's decision in *Puckett v. State*. Petitioner's counsel had more than one year following the appointment of counsel in which to file a petition including all of the claims Petitioner wished to include. Petitioner does not assert that new evidence or a new rule of law would have entitled him to assert an additional claim, nor is the Court aware of what claims Petitioner would have

---

[3] Petitioner also appears to assert that there was interference by officials that led to an ineffective or absent State corrective process, and that the circumstances surrounding the post-conviction process caused him to receive inadequate representation. Neither of these arguments are with legal or factual support. *See Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2648, 91 L.Ed.2d 397 (1986) ("cause" established with external impediment "preventing counsel from constructing or raising the claim"); *Pennsylvania v. Finley*, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987) ("right to appointed counsel extends to the first appeal of right, and no further").

brought if he had been allowed the opportunity to amend. Petitioner merely filed a blanket request to amend the petition. A January 6, 2003 motion for extension of time clarifies that counsel knew of the *Puckett* decision, inasmuch as counsel cited the opinion in the motion, requesting the full one-year from the issuance of the mandate in which to file. (See Post Conviction Pleadings vol. II). That motion also included a statement that "[t]he State agrees not to object to such an extension of time as long as such a request does not exceed the one-year mandate issuance rule." ( Post-Conviction Pleadings vol. II). Therefore, the Court finds that the decision of the Mississippi Supreme Court to disallow the filing of an amended State post-conviction petition more than one year after the mandate issued in Petitioner's case did not render the State corrective process absent or ineffective.

Petitioner also asserts that procedural default rules do not apply to him on federal habeas review, as the Mississippi Supreme Court addresses claims raised by petitioners even though the claims are barred or otherwise defaulted. (Pet. 21). This argument, where it is not specifically supported and shown applicable, is insufficient to sustain Petitioner's burden of proof. Petitioner bears the burden of showing similar claims with similar circumstances have been considered on the merits by the court. *See Sones*, 61 F.3d at 417. Petitioner's claim that procedural default rules are inapplicable is here rejected. These arguments are disposed of at this juncture and will not be addressed further in the body of the opinion.

**I.     Petitioner Was Denied His Constitutional Rights to Due Process and Equal Protection and Rights Guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution Where the Petitioner Was Not Competent to Proceed at His Trial or Sentencing Proceedings.**

In his first claim of error, Petitioner asserts that the facts uncovered at his trial and sentencing should have alerted the trial court to the need to further investigate the issue of Petitioner's competency. (Pet. 40-41). Petitioner argues that events occurred throughout trial and sentencing that raise a substantive incompetency claim, such that this Court should now hold a *nunc pro tunc* hearing on the issue. (Pet. Exhaustion Memo 9).

First, Petitioner argues that the trial report which was filed with the Mississippi Supreme Court on November 20, 2000, supports his claim. Judge Frank Russell's report indicated Petitioner's Intelligence Quotient ("IQ") to be between 70 and 100. The report also indicated Petitioner had "problems with mood and thinking which were characterological or the product of severe substance abuse," and it included a notation that the Missouri Department of Corrections reported to defense counsel that Petitioner had reported hallucinations while in custody. (Trial Tr. vol. 6, No. CR99-149, "Report of the Trial Judge Where Death Penalty is Imposed"). Second, Petitioner notes that at sentencing, upon inquiry about any mental illness Petitioner might have, Petitioner responded that he suffered "nothing substantial" in the way of mental illness. (Pet. 40). Finally, Petitioner refused to offer any evidence in mitigation at sentencing. (Pet. 40). These events, Petitioner argues, should have raised an issue about Petitioner's competency.

Respondents argue that this claim has never been presented in State court and is procedurally barred. (Answer 43, ¶ 42). However, as there is no redress available to Petitioner in State court, this claim may be considered exhausted for purposes of federal habeas review. *See*, *e.g.*, *Gray v. Netherland*, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996) (no habeas relief unless available remedies exhausted in state court, but requirement applies only to

available remedies at time of federal petition; exhaustion requirement satisfied if clear claims procedurally barred under state law); *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001); *see also* Miss. Code Ann. § 99-39-27 (9) (providing that "[t]he dismissal or denial of an application under this section is a final judgment and shall be bar to a second or successive application under this article.") and Miss. Code Ann. § 99-39-5 (2) ("[F]ilings for post-conviction relief in capital cases . . . shall be made within one (1) year after conviction."). As Petitioner's claim would now be barred from consideration under State law, Petitioner must demonstrate cause and prejudice to receive review of his claim. *See, e.g., Gray*, 518 U.S. at 161-62, 116 S.Ct. at 2080; *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2564-65. Petitioner fails to demonstrate cause for the default and resulting prejudice, and this claim is barred from review.

Even if a procedural bar did not preclude this claim, the Court would not be persuaded that Petitioner is entitled to relief. The law of the United States is clear that a defendant has a fundamental right to be tried only while competent. *See Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S.Ct. 1373, 1376, 134 L.Ed.2d 498 (1996), citing *Medina v. California*, 505 U.S. 437, 453, 112 S.Ct. 2572, 2581, 120 L.Ed.2d 353 (1992); *Drope v. Missouri*, 420 U.S. 162, 171-72, 95 S.Ct. 896, 903-04, 43 L.Ed.2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). A defendant is competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). A substantive claim of incompetency before this Court requires Petitioner to come forward with evidence sufficient "to raise a threshold doubt about competency," which is accomplished when facts are presented that "positively, unequivocally,

and clearly generate a real, substantial, and legitimate doubt" as to his mental competency at the time of trial. *Carter v. Johnson*, 131 F.3d 452, 460 (5th Cir. 1997).

A competency evaluation was performed prior to trial at the request of defense counsel. That examination was ordered for the express purpose of assisting the court in determining "whether, by reason of some defect, disease, or condition of the mind or memory (a) the defendant is unable to comprehend the nature of the charges against him and rationally aid in his defense; and (b) at the time of the commission of the crime herein charged, the defendant was not of such mental capacity as to distinguish between right and wrong." (Post-Conviction Pleadings vol. II, "Response to Petition for Post-Conviction Relief," Psy. Eval. Report to Judge Russell, January 4, 2000, Ex. C). Clinical psychologist, Dr. Charles Harris, and staff psychiatrist, Dr. R. McMichael, prepared a report for the court that concluded:

> "We are unanimous in our opinion that Mr. Bishop has the sufficient present ability to consult with his attorney with a reasonable degree of rational understanding in the preparation of his defense, and has a factual as well as rational understanding of the nature and object of the legal proceedings against him. We are also unanimous in our opinion that Mr. Bishop would have known the nature and quality of his alleged actions at the time of the alleged offenses, and would have known that those alleged actions would be wrong."

Petitioner's trial attorneys stated Petitioner was an active participant in his trial who, while having an apparent history of mental illness, was not unable to, or even impassive in, guiding his defense. (*See* Post-Conviction Pleadings vol. II, "Response to Petition for Post-Conviction Relief," Aff. of John D. Weddle, Ex. A, and Aff. of David Daniels, Ex. B).

From the record, it is apparent that there was no competency hearing in Petitioner's case because there existed no legitimate doubt as to Petitioner's competency at the time of the trial. A

competency evaluation was held, and Petitioner's counsel conceded his competency.  Petitioner

insisted upon foregoing jury sentencing and the presentation of mitigating evidence in the event

he was found guilty of capital murder, indicating that he was aware of the charges and their

consequence.  (*See* Post-Conviction Pleadings vol. II, Ex. A & B).  As the Fifth Circuit has

found, a trial court does not have to doubt a defendant's competency merely because the

defendant "is causing his trial to be conducted in a manner most likely to result in a conviction

and the imposition of the death penalty."  *See Roberts v. Dretke*, 381 F.3d 491, 498 (5th Cir.

2004).  Petitioner has failed to demonstrate that he is entitled to relief on this claim.

**II.	Petitioner Was Denied His Constitutional Rights to Due Process and Equal
	Protection and Rights Guaranteed by the Fifth, Sixth, Eighth, and Fourteenth
	Amendments to the United States Constitution Where the Petitioner Was Denied
	His Right to a Fair and  Impartial Judge at All Stages of the Proceedings.**

Petitioner asserts he was denied a fair and impartial judge by Judge Barry Ford's refusal

to recuse himself from presiding over the omnibus hearing held on January 31, 2000, the day

prior to the start of Petitioner's trial.  Petitioner moved for Judge Ford to recuse himself due to

Judge Ford's representation of Petitioner in 1989 when the judge was a public defender.  (Trial

Tr. vol. 3, 2-3,  Jan. 31, 2000).  Petitioner was heard on the motion, whereupon he testified he

and Judge Ford had disagreed during the representation, and that Judge Ford had tried to insist

Petitioner take a plea bargain which included a sentence Petitioner thought was too harsh.  (Trial

Tr. vol. 3, 3-4).  After stating that he had no independent recollection of the representation, which

was remote in time, and noting that the motion was not timely brought, Judge Ford denied the

motion, stating on the record that his prior representation of Petitioner would not influence his

decision-making.  (Trial Tr. vol. 3, 5).  Judge Ford proceeded with the hearing, though he did not

preside over the trial. (Trial Tr. vol. 3).

In support of his claim that Judge Ford was partial, Petitioner directs the Court to Judge Ford's denial of his requests for an independent expert in psychology.[4] On April 16, 1999, defense counsel filed two motions requesting expert psychological assistance. The first motion, which was granted by the trial court, requested Petitioner be referred to the State Hospital for a competency evaluation. The second motion, which was not ruled upon, requested that an expert be appointed to help prepare the defense case and for mitigation purposes. On January 20, 2000, trial counsel filed an "Ex Parte Motion for Funds to Secure Expert Assistance in the Field of Psychology," ostensibly to secure a ruling on the previously disregarded motion. This motion was addressed at the omnibus hearing, where it was denied by Judge Ford as untimely brought and lacking in support. (Trial Tr. vol.3, 9-10). Petitioner asserts that Judge Ford held an untimely hearing in violation of State law and that by ignoring the first motion and denying the second, Judge Ford evidenced a biased interest "in rushing Petitioner's case to trial" that essentially prevented Petitioner from securing and presenting mitigation evidence at his sentencing hearing. (Pet. 50-51).

The Mississippi Supreme Court considered Petitioner's claim on direct appeal, and the court noted that Judge Ford denied Petitioner's motion for recusal "on the basis that he had no recollection of representing Bishop, that the prior representation was remote in time, and that the motion for recusal was made the day before trial." *Bishop I*, 812 So.2d at 940. Citing Cannon 3(C)(1) of the Code of Judicial Conduct, the court noted that disqualification is required of a

---

[4] Petitioner notes that Judge Ford also denied his requests for an investigator, to bar the State from seeking the death penalty, for funds to investigate potential mitigating evidence, and for a cooling-off period prior to sentencing. (Pet. 48, ¶ 157).

judge when "his impartiality might reasonably be questioned," and that recusal is appropriate "if a reasonable person, knowing all of the circumstances, would harbor doubts about his impartiality." *Id.* Given the "limited circumstances of [Judge Ford's] involvement," the court found no abuse of discretion in the failure to recuse. *Id.*

Respondents contend that Petitioner cannot establish Judge Ford's partiality by directing the Court to the motions that were denied. Respondents assert that Petitioner was not entitled to expert assistance, as insanity was not raised as a defense, nor was the State planning to submit evidence against Petitioner of a psychological nature. *See Bishop I*, 812 So.2d at 939. Respondents contend that Petitioner had no right to a mitigation expert, and the denial of expert assistance is not an "extreme" situation that would implicate due process. (Answer 49). The Court agrees.

Due process requires that a defendant have a fair trial before an impartial judge. *See, e.g., Republican Party of Minnesota v. White*, 536 U.S. 765, 775-76, 122 S.Ct. 2528, 2535, 153 L.Ed.2d 694 (2002); *Bracy v. Gramley*, 520 U.S. 899, 905, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997). As there exists a presumption that officials discharge their duties without bias, the burden is on Petitioner to show that a genuine question exists regarding the judge's actual bias or the appearance of impropriety. *See Bigby v. Dretke*, 402 F.3d 551, 558-59 (5th Cir. 2005). At issue is whether Petitioner's particular circumstance is one "which would offer a possible temptation to the average . . . judge to . . . lead him not to hold the balance nice, clear, and true." *Aetna Life Insurance Co. v. Lavoie*, 475 U.S. 813, 822, 106 S.Ct. 1580, 1585, 89 L.Ed.2d 823 (1986) (citing *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972)). Such bias "is not lightly established." *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1052

(5th Cir. 1997).  A claim of actual bias may be established if Petitioner can demonstrate that Judge Ford was "acting clearly outside the bounds of law or reason in a manner that would signal any bias toward the defendant." *Bigby*, 402 F.3d at 560.  Petitioner has failed to persuade that Judge Ford's refusal to grant him a psychological expert was outside the bounds of law or reason, and it is insufficient allegation to support a finding of actual bias.

Aside from actual bias, the appearance of bias is a structural error.  *Id.* at 559.  The Due Process Clause requires disqualification "when a reasonable judge would find it necessary to do so." *See United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990).   Here, Petitioner does not argue that he was entitled to an expert, nor does he cite to any case law entitling him to an expert under his particular circumstances.  Petitioner comes forward with no support for his assertion that it was error not to hold the omnibus hearing on time.  Rather, he merely asserts that these errors were structural and denied him the right to a fair trial.

At the omnibus hearing, defense counsel acknowledged that the State Hospital report stated Petitioner was competent to stand trial, and Judge Ford noted that more evidence was needed before the court would grant the motion for an independent psychological expert.  (Trial Tr. vol. 3, 9).[5]  Judge Ford stated he was the only judge available to hear the motions on the eve of trial, and another judge proceeded over the case, presumably due to Petitioner's motion for recusal.  Judge Ford stated he had no independent recollection of the prior representation and that it would not bias his rulings.  That Judge Ford exercised caution and had another judge hear the

---

[5] Judge Ford determined that "[t]here has to be something indicated to the Court that - - to alert the Court that he is not able to assist you and not able to help you in the preparation of a defense, rather than just a fishing expedition.  That motion will be denied."  (Trial Tr. vol. 3, 9-10).

case appears to support his concern for the appearance of impartiality, not to besmirch it.

Petitioner has not demonstrated that the decision of the Mississippi Supreme Court was contrary to, or involved an unreasonable application of, clearly established federal law. He has also failed to demonstrate the court reached a decision based on an unreasonable determination of facts in light of the evidence presented. Therefore, Petitioner has failed to demonstrate that he is entitled to relief on this claim.

III. **Petitioner Was Denied His Constitutional Rights to Due Process and Equal Protection and Rights Guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution Where Prejudicial Evidence Was Improperly Admitted at Trial.**

At trial, the 911 audio tape of Rachel Dobbs' emergency call was admitted into evidence through the testimony of John Hall of the Lee County Sheriff's Department over an objection to hearsay and lack of proper foundation. (Trial Tr. vol. 4, 233-34, Feb. 3, 2000). Petitioner asserts that the tape was admitted without verifying chain of custody or its authenticity, and that there was also no showing that the 911 officer who received the call or the person who actually prepared the tape were unavailable, thereby denying him to his Sixth Amendment right to confrontation. (Pet. 52-53).

Petitioner attempted to raise this claim on post-conviction review, and the Mississippi Supreme Court rejected it, as it was "capable of determination at trial or on direct appeal" and held the claim procedurally barred. *Bishop II*, 882 So.2d at 151-52; *see also* Miss Code Ann. § 99-39-21(1). At trial, defense counsel objected to the tape's admission on the basis of hearsay and lack of proper foundation, which the trial court overruled. *Id.* at 152. The Mississippi Supreme Court noted it was error for the court to have overruled counsel's objection but

determined Petitioner failed to demonstrate cause and prejudice sufficient to overcome the procedural bar, as the 911 tape was cumulative of the testimony of Dobbs and Myhand. *Id.*

Petitioner does not demonstrate cause and prejudice to overcome the imposition of a procedural bar to this claim, and it is barred from federal review. *See, e.g., Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565. Even in the absence of a procedural bar, Petitioner cannot sustain his burden with regard to this claim. Officer Hall's testimony was cumulative of that of Rachel Dobbs and Myhand, both of whom testified at trial. The tape merely corroborated prior, independent evidence. Any error that resulted from the tape's admission, therefore, was harmless. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986) (whether testimony is cumulative is proper consideration factor in harmless error review). Petitioner is not entitled to relief on this claim.

**IV.     Petitioner Was Denied His Constitutional Rights to the Effective Assistance of Counsel Under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution at the Pre-Trial, Trial, and Sentencing Proceedings on Appeal.**

An accused has a constitutional right to effective, competent counsel. *See, e.g., United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Counsel has a duty to ensure that skills and knowledge are brought to trial to ensure the case is put to "reliable adversarial testing." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). On federal habeas review, a claim of ineffective assistance of counsel requires Petitioner to demonstrate his counsel's performance was so deficient and so prejudiced the defense that there was essentially no adversarial process. *Id.* at 687, 104 S.Ct. at 2064. In determining whether habeas relief should be granted on the basis of ineffective assistance of counsel, this Court must

engage in a two-part analysis, asking: (1) whether the representation provided fell within the parameters of objectively reasonable performance; and (2) whether it is reasonably probable that if counsel had not made unprofessional error(s) the proceedings would have resulted differently. *See Bell v. Cone*, 535 U.S. 685, 695, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002); *Strickland*, 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2068. Attorney performance is evaluated in light of what was known to counsel at the time of his conduct, and Petitioner bears the burden of demonstrating the choices made were not within the realm of trial strategy. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065.

The ineffective assistance of counsel can, in some circumstances, constitute "cause" sufficient to overcome a procedural default. *See Coleman*, 501 U.S. 722, 754, 111 S.Ct. at 2567. However, a petitioner claiming ineffective assistance of counsel in order to have a substantive claim reviewed on its merits must ordinarily present the ineffective assistance of counsel claim as an independent claim in state court prior to attempting to use it as "cause" to excuse a procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 1591, 146 L.Ed.2d 518 (2000). This rule prevents prisoners from sitting on their claims, thereby excluding the possibility of state court remedy in order to present the claim in federal court in the first instance. *Id.* at 453, 120 S.Ct. at 1592. Therefore, if the ineffective assistance of counsel claim has been defaulted, cause and prejudice must independently be established for that defaulted claim before the merits of the underlying claim may be considered.[6]

 A. Request for Psychiatric Experts

Petitioner first asserts that he received ineffective assistance of counsel when trial counsel

---

[6] A fundamental miscarriage of justice is not asserted or implicated here.

failed to timely move to have his motions for expert assistance heard, thereby allowing a ruling that the motions were untimely and preventing his presentation of mitigating evidence at trial. (Pet. 57-59). This claim has never been presented to the State courts for review, and it would now be barred from review pursuant to Mississippi's time and successive petition bars. *See* Miss. Code Ann. § 99-39-27(9) (successive petition bar) and Miss. Code Ann. § 99-39-5(2) (time bar). Therefore, this claim may be considered technically exhausted and reviewed by this Court only if Petitioner can demonstrate cause and prejudice for his failure to present the claim to the State courts for review. *See, e.g., Sones*, 61 F.3d at 418. Petitioner does not demonstrate cause and prejudice for his failure to present this claim in State court, and it is barred from review.

Even if this claim were not barred, it is insufficient to warrant relief. Petitioner's argument is essentially that no mitigating evidence was offered because Petitioner gave up hope after he did not obtain the services of a psychiatric expert. Even assuming Petitioner's counsel was deficient for failing to make a timely motion, Petitioner cannot demonstrate prejudice. Petitioner had the services of an investigator, paid by the trial court, to aid in preparing his defense. (*See* Trial Tr. vol. 3, 105, Feb. 2, 2000). To conclude that the denial of a psychiatric expert precluded Petitioner's opportunity or ability to present mitigating evidence would be a distortion of the facts of this case. Petitioner affirmatively decided not to present a defense case-in-chief, and he prevented his attorneys from presenting evidence in mitigation. (*See* Trial Tr. vol. 4, 289-90, Feb. 3, 2000; Trial Tr. vol. 5, 341-345, Feb. 4, 2000). Petitioner is not entitled to relief on this issue.

B.   Motion for Recusal

Petitioner asserts that "[c]ounsel made a motion for Judge Barry Ford to recuse himself

just prior to hearing on the pre-trial motions because Ford had represented Petitioner on unrelated charges in 1989 while serving as a public defender." (Pet. 59, ¶ 217). This claim has not been presented to the State court, and as Petitioner has not demonstrated cause and prejudice for the default, it is barred from review. *See, e.g., Sones*, 61 F.3d at 418; *see also* Miss. Code Ann. § 99-39-27 (9) (successive petition bar) and Miss. Code Ann. § 99-39-5 (2) (time bar). Moreover, the record demonstrates counsel made a timely motion for recusal once he learned of Judge Ford's prior representation of Petitioner. Judge Ford did not preside over Petitioner's trial. (Trial Tr. vol. 3, 3, 21). Petitioner is not entitled to relief on this issue.

C.    Motion for Change of Venue

Petitioner argues counsel performed deficiently by failing to file a motion for a change of venue or request a continuance to explore the extent of the jury venire's exposure to pre-trial publicity when over thirty venire members acknowledged they had prior knowledge of Petitioner's case. (Pet. 59-62). Petitioner notes that at least four members who responded affirmatively when asked whether they had prior knowledge of the case were seated on the jury. (Pet. 62).[7] Petitioner argues that counsel's failure to move for a change of venue and/or a continuance constitutes deficient performance.

The Mississippi Supreme Court considered this claim on post-conviction review. The

---

[7] Petitioner offers additional factual support for this claim by asserting that no one responded when the trial court asked about exposure to publicity, but over thirty individuals responded on defense counsel's voir dire. (Pet. 61). Petitioner contends that the trial court "subtly coax[ed] the venire into agreeing that no media coverage that they had been privy to would possibly prejudice them." (Pet. 77, ¶ 294) Petitioner argues that "[t]he entirety of the Judge's tone was meant to intimidate the venire into remaining silent about their views about news reports, etc. possibly effecting their ability to be fair." (Pet. 78, ¶ 298). The Court notes the argument presented but determines it is not relevant to whether counsel performed deficiently in failing to make a motion for change of venue.

court determined that counsel had no duty to make a venue transfer motion, and that the issue was one of trial strategy. *Bishop II*, 882 So.2d at 142. The court noted that the venire was extensively questioned about their exposure to publicity, and the exposed members were questioned about their ability to be impartial. *Id.* at 143. The court determined that the critical issue was "whether the venire members stated that they could be fair and impartial jurors if chosen," and that the record revealed each juror chosen answered that question affirmatively. *Id.* The court found that "[t]he record in this matter reveals that the jurors stated they could be fair and impartial. The record also reveals overwhelming evidence of Bishop's guilt. Counsels' performance was not deficient. However, even if it were, Bishop cannot show that such a deficiency prejudiced his defense." *Id.* In its review of the submitted evidence, the Mississippi Supreme Court noted that no affidavits or documentation concerning pre-trial publicity had been attached to the initial petition, though Petitioner included family affidavits and documentation of media coverage in his reply to the State's response. *Id.* at 142. The court granted the State's motion to strike the documents, as the documents were excerpts of media coverage during the course of the trial and post-verdict, such that the cited publicity did not have an influence on the sequestered jury. *Id.* at n.3.

Defense attorneys Weddle and Daniels determined there was no need for a change of venue at trial, and they stated there was no support for such a request. (See Post-Conviction Pleadings vol. II, "Response to Petition for Post-Conviction Relief," Ex. A & B). During defense counsel Daniels' voir dire, thirty-one persons acknowledged having heard about the crime. (Trial Tr. vol. 3, 58-70, Feb. 1, 2000). Out of those thirty-one, three individuals actually served as

verdict-rendering jurors.[8]  None of these jurors voiced hesitation about their ability to render an impartial verdict.  The trial court took precautions to ensure the jurors were not exposed to any outside information, and they were sequestered during the course of the trial.  (*See* Trial Tr. vol. 3, 89-94).

Bias may not be presumed merely be showing that media coverage could have possibly have had an affect on jurors.  *See Smith v. Puckett*, 907 F.2d 581, 585 (5th Cir. 1990).  Jurors may have prior knowledge of the facts of a case and still render an impartial verdict.  *See Dobbert v. Florida*, 432 U.S. 282, 301-03, 97 S.Ct. 2290, 2302-03, 53 L.Ed.2d 344 (1977); *Irvin v. Dowd*, 366 U.S. 717, 722-23, 81 S.Ct. 1639, 1642-43, 6 L.Ed.2d 751 (1961).  While Petitioner asserts that four individuals seated on the jury had pre-trial knowledge of the case, he does not assert any of the seated jurors were impartial.  Without a showing of impartiality on the part of the seated jurors, Petitioner must demonstrate a "trial atmosphere . . . utterly corrupted by press coverage." *Murphy v. Florida*, 421 U.S. 794, 798, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975); *see also Mayola v. Alabama*, 623 F.2d 992, 996-97 (5th Cir. 1980).

Petitioner fails to demonstrate actual juror bias, nor does his petition provide proof of an inflamed community atmosphere.  The voir dire responses of two prospective jurors, each of whom thought they could be impartial, does not provide the necessary support for Petitioner's claim.  (Pet. 78, ¶ 296, 297).  Petitioner has failed to present the Court with any authority that counsel's failure to seek a change of venue under these facts constitutes deficient performance, and the Court determines he has failed to demonstrate an entitlement to relief on this issue.  Even

---

[8] Linda Weil, Natalie Ferrell, and Richard Cotton were the seated jurors who indicated during voir dire that they had some knowledge of the events surrounding Petitioner's trial.  (*See* Trial Tr. vol. 3, 87).

if the Court were to presume a deficient performance by counsel, Petitioner was not prejudiced by counsel's failure where no seated juror was partial and there has been no showing of an inflamed community atmosphere. Petitioner has not demonstrated that the decision of the Mississippi Supreme Court was contrary to, or involved an unreasonable application of, clearly established federal law, nor has he demonstrated that the court reached a decision based upon an unreasonable determination of facts in light of the presented evidence. Therefore, he is not entitled to relief on this issue.

D.      Duty to Investigate and Present Mitigating Evidence

Petitioner asserts that trial counsel's failure to investigate his mental illness and mental retardation prevented the jury's consideration of significant mitigating evidence. (Pet. 62). Specifically, Petitioner asserts that his family members could have provided evidence that he has a familial history of mental illness, that he was in special education classes in middle school, that he was diagnosed as a child as suffering from "emotional disturbance," that he was abused, that he received head injuries, and that he "began drinking as an infant." (Pet. 62-63, ¶ 227). Petitioner asserts that counsel's total failure to investigate and interview family members was not within the realm of trial strategy, and that under applicable United States Supreme Court precedent, the failure to present and prepare mitigating evidence at a capital sentencing proceeding is ineffective assistance of counsel. (Pet. 63).

Petitioner presented this claim to the Mississippi Supreme Court on post-conviction review, and it was rejected by the court. *Bishop II*, 882 So. 2d at 143-146. First, the court noted that counsel was instructed "not to oppose the death penalty in the event of a guilty verdict and waived sentencing by the jury." *Id.* at 143. The Mississippi Supreme Court cited from the trial

record the exchange where defense counsel informed the court nothing would be offered in mitigation "in accordance with [Petitioner's] wishes." *Id.* at 143. The trial court questioned Petitioner to determine if that was in fact his desire and if he understood his right to present evidence. *Id.* at 144. It was also noted that Petitioner asked to address the court, whereupon he asked to be sentenced to death. *Id.* The Mississippi Supreme Court noted the affidavits from family members that were attached to Petitioner's application for post-conviction relief and determined that:

> [T]he quantity and quality of possible mitigation evidence is irrelevant based on Bishop's instructions to his defense attorneys. Bishop's counsel did all that they could, within the limitations placed on them by Bishop. Witnesses were not called, and mitigation evidence was not presented pursuant to Bishop's specific instructions. Because defense counsel acted in accord with Bishop's instructions, their performance was not deficient. *Id.* at 145.

Petitioner specifically instructed counsel not to present mitigating evidence, and he refused their advice. That a wealth of available mitigating evidence might have existed is of no value to Petitioner's argument, as he expressly, and against the advice of counsel, refused to allow such evidence to be presented. *See, e.g., Schriro v. Landrigan*, ___ U.S.___, 127 S.Ct. 1993, 1941, 167 L.Ed.2d 836 (2007) ("If [defendant instructed counsel not to offer mitigating evidence], counsel's failure to investigate further could not have been prejudicial under *Strickland*."). Petitioner has not demonstrated that the decision of the Mississippi Supreme Court was contrary to, or involved an unreasonable application of, clearly established federal law, nor has he demonstrated that the court reached a decision based upon an unreasonable determination of facts in light of the presented evidence. Therefore, he is not entitled to relief on this issue.

E.     Failure to Present a Defense in the Guilt-Innocence Phase of the Trial

Petitioner contends that trial counsel's failure to call a single witness in defense was a

complete failure to subject the prosecution's case to meaningful adversarial testing, such that he was denied the effective assistance of counsel. He also alleges ineffective assistance of counsel "due to trial counsel's failure to provide a meaningful defense to the allegation contained in the indictment." (Pet. 64).

The Mississippi Supreme Court noted Petitioner had failed to allege any specific facts, such as the witnesses who should have been called to testify in Petitioner's favor, which would make a *prima facie* showing of the ineffective assistance of his trial counsel. *Bishop II*, 882 So.2d at 146. Although finding the claim without merit, the court further noted that all of the eyewitnesses had been called during the State's case-in-chief, and they were cross-examined by defense counsel. *Id.* The court concluded that the only witness left to call would be Petitioner, who had previously confessed his involvement to police. *Id.* Therefore, the court found, even if deficiency could be presumed, prejudice was not demonstrated. *Id.*

Petitioner cites to the case of *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), in support of his claim. In *Cronic*, the Court determined there were some situations that were "so likely to prejudice the accused that the cost of litigating their effect . . . is unjustified." *Id.* at 658, 104 S.Ct. at 2046. The Court identified an attorney's failure to subject the opponent's case to adversarial testing as a situation in which the result of the trial is presumptively unreliable without a showing of prejudice. *Id.* at 659, 104 S.Ct. at 2047. In order for prejudice to be presumed, however, the counsel's failure must be complete. *See Bell*, 535 U.S. at 697, 122 S.Ct. at 1851.

The Court determines that *Cronic* is inapplicable to the performance rendered by Petitioner's trial counsel. A review of the record demonstrates that, in addition to the cross-

examination conducted by counsel, trial counsel also moved for a directed verdict at the end of the

State's case-in-chief, asserting that the State had failed to prove the elements of the underlying

kidnapping felony. (Trial Tr. vol. 4, 285-86, Feb. 3, 2000). Counsel stressed the fact that the

testimony indicated Petitioner was not the perpetrator. (Trial Tr. vol. 4, 285-86). Moreover, the

trial court, upon learning that Petitioner did not intend to put on a defense case-in-chief,

questioned Petitioner about his wishes.

> THE COURT: Have you participated in this decision with your attorneys to rest at
> this time without calling any witnesses?
> DEFENDANT BISHOP: Yes, sir.
> THE COURT: Is that what you desire to do?
> DEFENDANT BISHOP: Yes, sir.
> THE COURT: Do you understand that you do have the right to testify?
> DEFENDANT BISHOP: Yes, sir.
> THE COURT: Do you want to testify or not?
> DEFENDANT BISHOP: No, sir.
> THE COURT: You do not want to testify?
> (P. 289, LINES 18-29)
> DEFENDANT BISHOP: No.
> THE COURT: Very well. And is that your own decision, based on the advice and counsel
> that you've had from your attorneys?
> DEFENDANT BISHOP: Yes, sir.
> THE COURT: It's your personal decision not to testify before this jury?
> DEFENDANT BISHOP: Yes, sir. (Trial Tr. vol. 4, 289-90).

Defense counsel Daniels presented a closing argument in which he sought to impeach the

testimony of Ricky Myhand and addressed the weaknesses in the prosecution's case. (*See* Trial

Tr. vol. 5, 319-328, Feb. 4, 2000). Defense counsel reiterated to the jury that Petitioner did not

intend that Gentry be killed, and Petitioner did not inflict the fatal blows. He also argued to the

jury that the elements of kidnapping were not present. (*See* Trial Tr. vol. 5, 319-327). It appears

as though counsel made every effort at a defense within the confines placed on him by Petitioner,

and trial counsel did not completely fail to subject the case to adversarial testing. Petitioner has

failed to demonstrate deficient performance by trial counsel, and even if deficient performance were presumed, he has not demonstrated any prejudice resulting from the performance of his trial counsel. Therefore, he has not demonstrated the decision of the Mississippi Supreme Court was contrary to, or involved an unreasonable application of, Supreme Court precedent on this issue.

F.      Failure to Adequately Prepare for Trial

Petitioner argues that trial counsel did not seek to have any motions heard until seven days before trial, and that the motions were not actually heard until the day prior to trial, which rendered most of the requests untimely. (Pet. 64). Petitioner asserts that counsel "failed to investigate and interview trial witnesses," and that had they done so, they would have learned of Ricky Myhand's involvement. (Pet. 81, ¶ 319). Petitioner also asserts counsel failed to investigate and interview witnesses to prepare for sentencing, and that they "failed to consult with Petitioner to fully investigate Petitioner's case in a meaningful manner." (Pet. 81, ¶¶ 321 & 322).

The Mississippi Supreme Court addressed Petitioner's "very brief argument" that counsel failed to prepare adequately, and the court found the claim lacked sufficient specificity to establish a *prima facie* showing of ineffective assistance of counsel. *Bishop II*, 882 So.2d at 147. The court also noted that on direct appeal, no actual prejudice had been demonstrated from the failure to hold the omnibus hearing at least three days before trial. *Id.* The court stated that the rejection of the underlying merits precluded Petitioner's ability to demonstrate deficiency or prejudice with regard to the ineffective assistance of counsel claim. *Id.*

Respondents contend that Petitioner's claim is unexhausted for failure to present the claims to the State court. (R. Exhaustion Memo, 17). Respondents note that Petitioner only presented the State court with the fact that counsel failed to have his motions timely heard., and

that the additional substantive grounds for this claim are unexhausted and bar this Court's review.

It is not disputed that Petitioner raised in his State petition a claim that trial counsel's failure to adequately prepare for trial constituted ineffective assistance of counsel. The only dispute is whether Petitioner's newly asserted factual allegations in support of that claim render the claim unexhausted. The exhaustion requirement requires a petitioner to present the state court with the same facts and legal theory that are presented in federal court. *See Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006). However, when additional facts merely supplement a claim, they do not render the claim unexhausted. *See Vasquez v. Hillary*, 474 U.S. 254, 257-58, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986). Although Petitioner has presented this Court with factual allegations not presented to the Mississippi Supreme Court, he has not presented the Court with any facts that would not have been considered by the Mississippi Supreme Court in its review of the entire record. The introduction of additional factual allegations do not alter the substance of Petitioner's claim, and the Court determines they do not render the claim unexhausted. *See Picard v. Connor*, 404 U.S. 270, 276, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971) ("[I]f the state courts have had the first opportunity to hear the claim sought to be vindicated," claim may be considered exhausted); *see also Vela v. Estelle*, 708 F.2d 954, 958-960 (5th Cir. 1983), *cert. denied*, 464 U.S. 1053, 104 S.Ct. 8736, 79 L.Ed.2d 195 (1984) (new factual claims discernible from review of record did not render ineffective assistance of counsel claim unexhausted where petitioner had raised ineffective assistance of counsel claim in state court, and state habeas court had duty to review record as whole in evaluating counsel's performance).

Despite this Court's conclusion that this claim may be considered exhausted, Petitioner

has not demonstrated an entitlement to relief. As the Court has noted, trial counsel obtained the services of an investigator to aid in preparation of Petitioner's defense. (*See* Trial Tr. vol. 3, 105). Ricky Myhand's involvement was an issue defense counsel repeatedly referenced at trial. (*See* Trial Tr. vol. 4, 229, 255-278; Trial Tr. vol. 5, 319-328). As Petitioner insisted that no defense case-in-chief or mitigating evidence be presented, the lack of testimony and evidence presented on Petitioner's behalf is not an indication of trial counsel's failure to prepare. This Court cannot determine that the decision reached by the Mississippi Supreme Court was contrary to, or involved an unreasonable application of clearly established federal law, nor can it determine that the court reached a decision based upon an unreasonable determination of facts in light of the presented evidence. Petitioner is not entitled to relief on this issue.

G.      Ineffectiveness on Appeal

Petitioner argues that counsel was ineffective for failing to raise the claim that the imposition of the death penalty violated the precedent of *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). (Pet. 64). In his State post-conviction proceedings, Petitioner raised the substantive claim that his death sentence violated *Tison*, and the claim was found to be without merit. *Bishop II*, 882 So.2d at 147-48. The court determined Petitioner's "actions overwhelmingly show that he evinced a reckless indifference to Gentry's killing." *Id.* at 148.

Although Petitioner raised *Tison* as a substantive claim before the Mississippi Supreme Court, he has not presented the State courts with the claim that counsel was ineffective for failing to raise the argument. Petitioner has not demonstrated cause and prejudice, or that a fundamental miscarriage of justice would result from this Court's failure to consider this claim, and it is barred

from review.   *See*, *e.g*., *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565.

Moreover, in *Tison*, the Supreme Court held "that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement."  *Tison*, 481 U.S. at 158, 107 S.Ct. at 1688.  This is precisely what the Mississippi Supreme Court found, and Petitioner is entitled to no relief on this issue.

H.    Cumulative Error

Petitioner also makes a general claim that relief should be granted due to the cumulative error of counsel.  (Pet. 71).  As Petitioner has failed to demonstrate error by trial counsel, he is not entitled to relief on the claim that he was deprived a fair trial due to counsel's cumulative error. *See Miller v. Johnson*, 200 F.3d 274, 286 n.6 (5th Cir. 2000).

**V.    Petitioner Was Denied His Constitutional Rights to the Effective Assistance of Counsel Under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution at the Post-Conviction Proceedings.**

Petitioner asserts that he was denied effective representation during his State post-conviction proceedings. (Pet. 83).  Petitioner acknowledges this claim has not been presented to the State court and that there is "no independent Sixth Amendment right under the federal Constitution" to the effective assistance of counsel during post-conviction proceedings, but he argues that Mississippi law recognizes such a right.  (Pet. 84).  He argues that interpreting Supreme Court precedent to preclude effective assistance on collateral review is erroneous and is in conflict with demanding standards placed upon counsel in collateral proceedings.  (Pet. 84-85). "Simply put, the federal courts, on the one hand, cannot demand flawless performance by counsel to preserve all claims for later habeas review and then, on the other hand, maintain that counsel need not be effective."  (Pet. 85, ¶ 334).

Presumably, Petitioner asserts this claim in order to attempt to demonstrate "cause" sufficient to allow review of his defaulted claims. Petitioner's claim, raised for the first time in these proceedings, is not cognizable on federal habeas review. *See, e.g.*, *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004), *cert. denied*, 543 U.S. 1124, 125 S.Ct. 1067, 160 L.Ed.2d 1074 (2005) ("Contrary to Matchett's suggestion, a state prisoner may not cite the ineffective assistance of state habeas counsel as "cause" for a procedural default even for 'cases involving constitutional claims that can only be raised for the first time in state post-conviction proceedings."); *see also* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."). Petitioner is not entitled to relief on this claim.

**VI.    Petitioner Was Denied His Constitutional Rights to Due Process and Equal Protection and Rights Guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution Where the Trial Court Erred in Giving an Aiding and Abetting Instruction.**

Petitioner asserts that the jury instructions at his trial allowed the jury to find him guilty of capital murder merely by finding he aided in kidnapping the victim. (Pet. 91). Petitioner asserts that the aiding and abetting instruction given by the trial court refers to "the crime," allowing a jury verdict of guilty if the jury found he did any act constituting an ingredient of "the crime," without specifying whether "the crime" was kidnapping, murder, or capital murder. (Pet. 88).

Jury Instruction No. 10, the aiding and abetting instruction, reads as follows:

The Court instructs the Jury that each person present at the time of, or consenting to and encouraging, aiding or assisting in any manner in the commission of a crime, or knowingly and wilfully doing any act which is an ingredient in the crime, is as much a principal as if he had with his own hands committed the whole offense.

Therefore, if you believe from the evidence in this case beyond a reasonable doubt that the crime charged in this case did take place and that Dale Leo Bishop was present at the time and place where the crime was committed, and that he knowingly and wilfully encouraged, aided, or assisted in any material manner in the commission of that crime or knowingly and wilfully did any act which is an ingredient in that crime, then he is as much a principal as if he had with his own hands committed the whole offense.

Petitioner asserts that Jury Instruction No. 9 added to the "confusing nature of the Instruction," inasmuch as it does not require the jury to find every element of kidnapping beyond a reasonable doubt in order to find Petitioner guilty. (Pet. 87, ¶ 344). Instruction No. 9 reads as follows:

The Court instructs the Jury that any person who shall without lawful authority forcibly seize and confine any other person or shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his will has committed the crime of kidnapping.
If you believe from all the evidence in this case beyond a reasonable doubt that the defendant, DALE LEO BISHOP, did, act with another, wilfully, unlawfully and feloniously, without lawful authority kidnap or forcibly seize and confine Marcus James Gentry with intent to cause him to be secretly confined or imprisoned against his will, then the same would constitute kidnapping.

The Mississippi Supreme Court considered Petitioner's claim as to the aiding and abetting instruction on direct appeal of his murder conviction and sentence. The court addressed the claim while noting that Petitioner did not object at trial to the instruction's legal correctness[9], and it determined that the instruction, while error, was harmless. *Bishop I*, 812 So.2d at 942. The court

---

[9] At trial, defense counsel objected to the aiding and abetting instruction on the ground that it was confusing, and that objection was overruled. (Trial Tr. vol. 4, 295).

compared the instruction at issue to that in *Hornburger v. State*, 650 So.2d 510 (Miss. 1995), where the court found the error harmless when read in conjunction with the other instructions that properly placed the burden of proof upon the State. *Bishop I*, 812 So.2d at 942-43. Petitioner asserted this claim on post-conviction review as well, claiming that the error was of constitutional magnitude, such that he was denied a fundamentally fair trial by the grant of the instruction. *Bishop II*, 882 So.2d at 150. The court found the claim barred by the res judicata doctrine and otherwise without merit. *Id. See also* Miss. Code Ann. 99-39-21(3) ("The doctrine of res judicata shall apply to all issues, both factual and legal, decided at trial and on direct appeal.").

Respondents assert that Petitioner's claim is barred from federal habeas review based on an independent and adequate State law, as Petitioner waived the issues by not preserving them for appeal. Without waiving the bar, Respondents note that a jury instruction is not generally cognizable in federal habeas review, and that the question for this Court is whether the instructional rulings rose to the level of a constitutional violation. (Answer 50, ¶ 45).

In its opinion on direct appeal of Petitioner's claim, the Mississippi Supreme Court addressed the issue notwithstanding the bar. *Bishop I*, 812 So.2d at 942. As Petitioner's specific objection waived all other grounds for objection under Mississippi law, and since Petitioner has not demonstrated Mississippi's law of waiver is not regularly or strictly applied to similar claims, this claim is barred from federal habeas review on independent and adequate State law grounds unless Petitioner can demonstrate cause and prejudice for the default. *See, e.g., Harris v. Reed*, 489 U.S. 255, 261, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989) (federal court may not reach issue when state court opinion contains "plain statement" that decision rests upon state law grounds); *Williams v. Puckett*, 283 F.3d 272, 280 (5ᵗʰ Cir. 2002) (In order to show a state

procedural rule is not adequate, a petitioner must demonstrate "the state has failed to apply the procedural bar to claims identical or similar to those raised by [the petitioner] himself."); *Sones*, 61 F.3d at 416-17 (adequacy of state procedural rule presumed unless shown not strictly or regularly followed). Petitioner has failed to demonstrate that the rule is inadequate as applied to his claim or the requisite cause and prejudice, and this claim is barred from review.

Even in the absence of a procedural bar, Petitioner would be entitled to no relief on his claim. A deficient jury charge is not grounds for federal habeas relief unless the instruction was, in and of itself, violative of a constitutional right. *See Estelle v. McGuire*, 502 U.S. 62, 71-72, 112 S.Ct. 475, 481-82, 116 L.Ed.2d 385 (1991). To collaterally attack the constitutional validity of his judgment on the basis of a jury instruction, Petitioner bears the burden of demonstrating that the instruction "by itself so infected the entire trial that the resulting conviction violates due process . . ." *Henderson v. Kibbe*, 431 U.S. at 154-55, 97 S.Ct. 1730, 1736-37, 52 L.Ed.2d 203 (1977) (citing *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)). If the erroneous instruction did not have a "substantial and injurious effect or influence in determining the jury's verdict," the error is considered harmless. *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1722, 123 L.Ed.2d 353 (1993).

At trial, Jury Instruction No. C-5 properly instructed the jury on the presumption of innocence and the State's burden of proof.[10] (Trial Tr. vol. 2, 116). Jury Instruction No. 8

_____

[10] Jury Instruction No. C-5 reads:

The law presumes every person charged with the commission of a crime to be innocent. This presumption places upon the State of Mississippi the burden of proving the Defendant guilty beyond a reasonable doubt. The presumption of innocence attends the Defendant throughout the trial and prevails at its close unless overcome by evidence which satisfies the jury of his guilt beyond a reasonable doubt. The defendant is not required to prove his innocence.

The burden of proving beyond a reasonable doubt every material element of the crime

provided the proper law as to the elements of capital murder in conjunction with a kidnapping.[11]

(Trial Tr. vol. 2, 119).  Jury Instruction No. 11 provided the essential elements of capital murder.[12]

(Trial Tr. vol. 2, 122).  Jury Instruction No. 12 contained instructions on the lesser crime of

murder.[13]  (Trial Tr. vol. 2, 123).  Although Petitioner cites Jury Instruction No. 9 as error, he

makes no argument as to why this instruction, cited above, is faulty, and the Court notes that it,

too, contains the appropriate burden of proof.  Jury instructions are considered in their entirety and

_____

with which the Defendant is charged is upon the State of Mississippi.  If the State has failed to
prove any material element of the crime charged beyond a reasonable doubt, you are to find the
Defendant not guilty.

[11]  Jury Instruction No. 8 reads:
The Court instructs the Jury that the killing of a human being without the authority of law
by any means or any manner shall be capital murder when done with or without any design to
effect death by any person engaged in the commission of the crime of kidnapping.
If you believe from all the evidence in this case, beyond a reasonable doubt, that the
defendant, DALE LEO BISHOP, did, acting with another, wilfully, unlawfully, feloniously, with
or without deliberate design, kill Marcus James Gentry, a human being, without authority of law,
when engaged in the commission of the crime of Kidnapping, then, if you so believe from all the
evidence in this case beyond a reasonable doubt, the defendant is guilty of capital murder.

[12]  Jury Instruction No. 11 reads, in part:
If you find that the State has failed to prove one of the essential elements of the crime of
capital murder, you must find the defendant not guilty of capital murder, and you should proceed
with your deliberations to decide whether the State has proved beyond a reasonable doubt all the
elements of the lesser crime of murder.  The crime of murder is distinguished from capital
murder by the absence or failure to prove that the crime was committed while in the act of a
commission of a kidnapping.

[13] Jury Instruction No. 12 reads:
If you fail to find the defendant guilty of the crime of Capital Murder, you should
continue your deliberations to consider the elements of the crime of Murder.  If you find from the
evidence in this case beyond a reasonable doubt that Dale Leo Bishop, while acting alone or in
concert with another, did wilfully, unlawfully and feloniously, without authority of law, kill and
murder Marcus James Gentry, with malice aforethought or deliberate design, then you shall find
the defendant DALE LEO BISHOP, guilty of Murder.
If the State has failed to prove one or more of these elements beyond a reasonable doubt,
then you shall find the defendant not guilty of Murder.

in light of the entire trial record.  *See Estelle*, 502 U.S. at 72, 112 S.Ct. at 482.   Here, the

instructions at issue comported with constitutional requirements of requiring proof beyond a

reasonable doubt that all of the elements of capital murder were satisfied prior to entering a

verdict of guilty.  The aiding and abetting instruction, while lacking specificity in that it referred

to "the crime," did not result in a misallocation of the burden of proof when read in conjunction

with the other instructions.  The "crime" charged was clearly capital murder.  Petitioner has failed

to demonstrate he is entitled to relief on this claim.

**VII.   Petitioner Was Denied His Constitutional Rights to Due Process and Equal
Protection and Rights Guaranteed by the Fifth, Sixth, Eighth, and Fourteenth
Amendments to the United States Constitution Where the Petitioner Was Permitted
to Waive a Sentencing Jury**.

Prior to the penalty phase of Petitioner's trial, the trial court was informed of Petitioner's

desire to waive jury sentencing in the event he was found guilty of capital murder.  (Trial Tr. vol.

5, 341, Feb. 4, 2000).  Following the jury's verdict of guilt as to capital murder, Petitioner and the

State executed a written waiver of jury sentencing.  (Trial Tr. vol. 2, 149-150).  The trial court

declared a recess to allow Petitioner's counsel an opportunity to meet with Petitioner and ensure

Petitioner's decision was his own, and that it was knowingly and voluntarily made.  (Trial Tr. vol.

5, 341).  After the recess, the trial court was provided both Petitioner and the State's written

waivers, whereupon the trial judge asked Petitioner questions, under oath about his decision.

(Trial Tr. vol. 5, 341).  The record reveals the following transpired:

> BY THE COURT: Mr. Bishop, do you-let me ask you this first. Are you presently
> under the influence of any intoxicating liquor, drug or other substance?
> BY MR. BISHOP: No, sir.
> BY THE COURT: How old are you?
> BY MR. BISHOP: 25-26. 26.

BY THE COURT: Do you suffer from any known mental illness, sickness, disease or disorder?

BY MR. BISHOP: Nothing substantial.

BY THE COURT: Well, tell me about anything minor.

BY MR. BISHOP: I don't know-no. The answer is no.

BY THE COURT: All right. How far did you get in school?

BY MR. BISHOP: 7th, 8th grade.

BY THE COURT: Can you read and write?

BY MR. BISHOP: Yes, sir.

BY THE COURT: Do you understand that you do have the right, at this phase of the proceeding, the second phase commonly referred to as the sentencing phase, to have mitigating circumstances presented on your behalf, unlimited with respect to the number or really what they relate to, just about anything can be offered in way of mitigation by you and you can make that, present that proof or that testimony in the presence of the jury? Do you understand that?

BY MR. BISHOP: Yes, sir.

BY THE COURT: And that jury has the right to deliberate, after hearing those mitigating circumstances and the aggravating circumstances, if any, presented by the State, and that jury would have the final say-so in determining whether or not to sentence you to death or sentencing you to life without the possibility of parole. Do you understand that?

BY MR. BISHOP: Yes, sir.

BY THE COURT: And further, do you understand that if the jury could not agree, then the Court would only have one option and that would be to sentence you to life without parole? Do you understand that?

BY MR. BISHOP: Yes, sir.

BY THE COURT: Do you also understand that the jury could sentence you to life without parole, even though the aggravating circumstances, even though they found that the aggravating circumstances outweighed the mitigating circumstances? Do you understand that?

BY MR. BISHOP: Yeah.

BY THE COURT: Are you, as you've indicated in this written document, are you knowingly, freely, voluntarily, and understandingly waiving your right to a jury trial at the sentencing phase of the proceeding?

BY MR. BISHOP: Yes, sir.

BY THE COURT: Very well.

Mr. Daniels, I want you, if you desire, to ask Mr. Bishop any questions that you may think necessary.

BY MR. DANIELS: All right, your Honor.

BY THE COURT: From right there will be fine.

BY MR. DANIELS: Mr. Bishop, have you been advised against doing this by Mr. Weddle and I?

BY MR. BISHOP: Yes, sir.

BY MR. DANIELS: Is this something that you have thought about thoroughly

before today?
BY MR. BISHOP: Yes, sir.
BY MR. DANIELS: And did you advise me of this earlier on in my representation
of you?
BY MR. BISHOP: Yes, sir.
BY MR. DANIELS: Do you understand that you might be giving up some issues
that may come up on the appeal of this case before the Mississippi Supreme Court
by waiving this sentencing hearing before a jury?
BY MR. BISHOP: Yes, sir.
BY MR. DANIELS: Is this your firm desire to do this?
BY MR. BISHOP: Yes.
BY MR. DANIELS: I have nothing further, your Honor. Mr. Weddle may have something.
BY THE COURT: Mr. Weddle, do you have anything you want to add?

BY MR. WEDDLE: Mr. Bishop, if I asked you the same questions that Mr.
Daniels asked you, would your answers still be the same with respect to my questions?
BY MR. BISHOP: Yes, sir.
BY MR. WEDDLE: Are you satisfied that we have advised you of all rights that
the Court has just advised you of?
BY MR. BISHOP: Yes, sir.
BY MR. WEDDLE: And, again, you waive those rights freely and voluntarily?
BY MR. BISHOP: Yes, sir.
BY MR. WEDDLE: Nothing further, your Honor.
BY THE COURT: Mr. Bishop, are you satisfied with the legal services and advice
of your attorneys?
BY MR. BISHOP: Yes, sir.
BY THE COURT: Do you feel that your attorneys have properly advised you
before making this decision?
BY MR. BISHOP: Yes, sir.
BY THE COURT: And is it your own personal desire to waive jury for the
sentencing phase?
BY MR. BISHOP: Yes, sir.
BY THE COURT: Very well. You may be seated.  (Trial Tr. vol. 5, 342-345).

The State was allowed to reintroduce all of the evidence presented to the court during the

guilt phase of the trial for purposes of the court's consideration in sentencing.  (Trial Tr. vol. 5,

345).  The State also asked the trial court to consider, for purposes of sentencing, that: (1) the

capital murder was committed in conjunction with kidnapping; (2) the murder was "especially

heinous, atrocious, or cruel;" (3) that the aggravating circumstances outweigh any mitigating

circumstances; and (4) that the "defendant contemplated that lethal force would be employed."

(Trial Tr. vol. 5, 346). Attorney Daniels did not offer any evidence in mitigation "in accordance

with [Petitioner's] wishes." (Trial Tr. vol. 5, 347). Attorney Weddle asked the trial court to make

a record concerning Petitioner's desire to forego the presentation of mitigating evidence. (Trial

Tr. vol. 5, 347). The trial court asked Petitioner whether he understood he had the right to present

evidence and have the court consider it, and Petitioner answered affirmatively. (Trial Tr. vol. 5,

348). The trial court asked whether Petitioner wanted "to offer any mitigating facts or

circumstances whatsoever," and Petitioner responded, "No, sir." (Trial Tr. vol. 5, 348). The

trial court then retired, and following its deliberation, Petitioner was sentenced to death.

The trial court stated:

> The Court finds from the evidence beyond a reasonable doubt that the following
> facts existed at the time of the commission of the capital murder charged in the
> indictment: that the defendant, Dale Leo Bishop, contemplated that lethal force
> would be employed; next, the Court finds that the aggravating circumstance of the
> capital murder being especially heinous, atrocious, and cruel exists beyond a
> reasonable doubt and is sufficient to impose the death penalty; and that there are
> insufficient mitigating circumstances to outweigh the aggravating circumstance;
> and further finds that the defendant should suffer death as to the indictment. (Trial
> Tr. vol. 5, 348-49).

> On direct appeal, Petitioner argued that it was error to allow him to waive jury sentencing.

The Mississippi Supreme Court considered the language of Miss. Code Ann. § 99-19-101 (1),

which provides, in part, that:

> If the trial jury has been waived, or if the defendant pleaded guilty, the sentencing
> proceeding shall be conducted before a jury impaneled for that purpose or may be
> conducted before the trial judge sitting without a jury if both the State of
> Mississippi and the defendant agree thereto in writing.

The court acknowledged that the statute contains no explicit language providing for the waiver of jury sentencing but determined that "case law and common practice" demonstrate that waiver is allowed. *Bishop I*, 812 So.2d at 945. The court noted the trial court's pains to ensure that Petitioner made a voluntary choice free of any influence, that he understood the rights he was giving up in waiving sentencing, and that he made an explicit waiver following a discussion of the consequences of waiving his right. *Id.* Noting that many constitutional rights may be waived by a defendant, and that a trial judge may constitutionally impose the death penalty, the court found Petitioner's argument without merit. *Id.*

On post-conviction review, Petitioner's argument was determined to be procedurally barred by the doctrine of res judicata and otherwise without merit. *Bishop II*, 882 So.2d at 148-49.[14]

In his federal habeas petition, Petitioner argues that the trial judge was without the authority to sentence him to death without a jury finding of aggravating circumstances, as they are, "for all intents and purposes, elements of the aggravated crime of capital murder." (Pet. 93, ¶ 366). Petitioner contends that the Mississippi Supreme Court's analogies to other constitutional

---

[14] Petitioner argues that his waiver was not knowing and voluntary, and that the trial judge failed to advise Petitioner of the possible sentences that could be imposed. (Pet. 98, ¶¶ 383 & 384). This assertion is made by Petitioner as proof that the decision of the Mississippi Supreme Court was unreasonable, but it is not argued as a separate claim in the petition, nor is any legal argument given to support the assertion. This argument was presented as a claim on post-conviction review, where the Mississippi Supreme Court determined it procedurally barred for failure to raise the issue on direct appeal. *See Bishop II*, 882 So.2d at 149. The court found, notwithstanding the bar, that the record clearly contradicted Petitioner's contention. *Id.* To the extent Petitioner did intend for this Court to consider this argument as an independent claim, it is waived. Alternatively, it is procedurally barred and otherwise without merit for the reasons set forth by the Mississippi Supreme Court in its consideration of the issue.

rights which may be waived, such as the Fifth Amendment right against self-incrimination, are not appropriate when considering the waiver of a life. (Pet. 94 ¶ 370). Petitioner attempts to distinguish this case from *Illinois v. Maxwell*, 173 Ill.2d 102, 670 N.E.2d 679 (Ill. 1996), cited by the Mississippi Supreme Court in support of its decision, in that the Illinois statute at issue specifically provides for a waiver of jury sentencing. (Pet. 95). Petitioner argues that the Mississippi statute, on the other hand, only provides for an exception to jury sentencing when a jury trial has been waived, or if there is a guilty plea. (Pet. 96, ¶ 374). Petitioner asserts that because at least one of statutory aggravating factors must be found by a jury before a defendant is sentenced to death, those statutory aggravating circumstances are "the functional equivalent of an element of a greater offense." *See Ring v. Arizona*, 536 U.S. 584, 589, 122 S.Ct. 2428, 2432, 153 L.Ed.2d 556 (2002) (capital defendants entitled to jury determination of any fact that would increase maximum punishment); *Apprendi v. New Jersey*, 530 U.S. 466, 494, 120 S.Ct. 2348, 2365 n. 19, 147 L.Ed.2d 435 (2000).

Respondents assert that a trial judge may constitutionally impose the death penalty, and that a criminal defendant may waive certain fundamental rights. (Answer 65). Respondents argue that *Ring* is not an appropriate support for Petitioner's argument because he, unlike the defendant in *Ring*, had the right to have a jury unanimously determine the aggravators and waived that right. (Answer 65-66). Respondents assert that *Ring* and *Apprendi* do nothing to abrogate a defendant's entitlement to waive his constitutional rights, and that implicit in *Ring* is that it is the defendant's own decision whether to be sentenced by a jury or by a judge. (Answer 66, ¶ 47).

While a criminal defendant has the right to a jury trial under the Sixth Amendment to the United States Constitution, that right may be waived. *See, e.g., Adams v. E.S. ex rel. McCann*,

317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942). Petitioner cites to both *Ring* and

*Apprendi* for the proposition that he did not have the right to waive a jury determination of any

fact that increases the maximum punishment.   However, those rights may themselves be waived.

*See Blakely v. Washington*, 542 U.S. 296, 310, 124 S.Ct. 2531, 2541, 159 L.Ed.2d 403 (2004).  It

is clear from the record that Petitioner was fully informed of the consequences of waiving a jury

sentencing, and it is equally clear that he was not deprived of any right to have the jury decide the

sentencing issue.  He affirmatively chose not to have a jury sentence him and may not now sustain

his burden of proof on federal habeas review by suggesting he never had the right to waive such

sentencing.  Petitioner has failed to sustain his burden of demonstrating that the Mississippi

Supreme Court reached a decision contrary to, or involving an unreasonable application of, clearly

established law with regard to this claim, and Petitioner is entitled to no relief on this issue.

**VIII.    Petitioner Was Denied His Constitutional Rights to Due Process and Equal Protection and Rights Guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution Where the Petitioner Was Denied a Fair and Reliable Sentencing Hearing by the Trial Court's Denial of Funds for a Psychological Expert.**

On April 16, 1999, Petitioner filed a "Motion for Psychiatric Evaluation," which requested

a psychiatric evaluation to determine his competency, whether he represented a danger, and

providing the trial court notice that Petitioner "displays signs of possible psychiatric problems."

(Trial Tr. vol. 1, 18-19).  The motion requested Petitioner be evaluated at the Mississippi State

Hospital at Whitfield.  On the same date, Petitioner also filed a "Motion for Psychiatric or

Psychological Expert," which requested that an independent expert be appointed to evaluate

Petitioner's competency, noting that the services were needed for trial preparation.  (Trial Tr. vol.

1, 21-23).   The motion stated that "sanity is likely to be a significant issue at trial and Defendant

is entitled to a psychiatrist or psychologist, as an independent expert to assist meaningfully in his defense." (Trial Tr. vol. 1, 22, ¶ 4). On April 20, 1999, the trial court entered an order sustaining Petitioner's request for a psychiatric evaluation at the Mississippi State Hospital, "for the purpose of determining whether, by reason of some defect, disease, or condition of the mind or memory (1) the defendant is unable to comprehend the nature of the charges against him and rationally aid in his defense; and (2) at the time of the commission of the crime herein charged, the defendant was of such mental capacity as to distinguish right and wrong." (Trial Tr. vol. 1, 25-26). On November 12, 1999, the trial court entered an order granting Petitioner's motion for a continuance, as the psychological evaluation had not yet been performed. (Trial Tr. vol. 1, 27). On January 18, 2000, Petitioner filed his "Ex Parte Motion for Funds to Secure Expert Assistance in the Field of Psychology," requesting an expert be appointed for the purposes of trial preparation. (Trial Tr. vol. 1, 42-50). Petitioner asserted he was entitled to the assistance of an expert, as he made a "threshold showing that his sanity is likely to be a significant issue at trial," and that "years of substance and substance abuse at the time of the alleged crime" caused Petitioner to suffer "from diminished reason, diminished memory, and diminished ability to perceive reality." (Trial Tr. vol. 1, 43, ¶ 4). Petitioner's motion asserted that expert assistance was warranted as the "psychological matters will be an extraordinarily significant factor at Mr. Bishop's sentencing trial." (Trial Tr. vol. 1, 49, ¶ 14). The motion asserted that assistance was needed to present mitigating circumstances and to rebut the State's showing of aggravating circumstances. (Trial Tr. vol. 1, 49). In his motion seeking expert assistance, Petitioner provided the name of the expert sought and the expected cost of an evaluation. (Trial Tr. vol. 1, 49).

On January 31, 2000, Petitioner's omnibus hearing was held with Judge Barry W. Ford

presiding. (Trial Tr. vol. 3, 2). Defense counsel Daniels presented the trial court with the motion

for an independent psychological expert, noting that Petitioner had been examined at the State

Hospital, and that report stated Petitioner was competent to stand trial. (Trial Tr. vol. 3, 8-9).

Counsel stated that an expert was needed to develop mitigation evidence, particularly in light of

Petitioner's history of "mental and emotional problems dating back to his childhood." (Trial Tr.

vol. 3, 9). The court stated:

> "I've looked at the report that I received from the state hospital. And unless there's
> some other evidence that indicates that he was not competent, then the motion is
> not well taken. And I didn't see anything in there that I received. How long was
> Mr. Bishop incarcerated before he was sent down to Whitfield?"
>
> MR. DANIELS: About ten or eleven months, your Honor.
>
> THE COURT: And when was this motion filed?
>
> MR. DANIELS: About a month ago. Less than a month ago. Just after he was
> found competent to stand trial, your Honor, by that psychiatrist for the state.
>
> THE COURT: There has to be something indicated to the Court that - - to alert the
> Court that he is not able to assist you and not able to help you in the preparation of
> a defense, rather than just a fishing expedition. That motion will be denied. (Trial
> Tr. vol. 3, 9-10).

Petitioner argues that in order for mental illness to be considered in mitigation, someone

must pay for the preparation of it. (Pet. Reply 14). In his federal habeas petition, Petitioner

argues that a capital defendant's right to expert assistance applies to sentencing proceedings,

citing *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), in support.

Petitioner asserts that the trial court's denial of his motion for expert assistance precluded the

presentation of significant, relevant evidence, and that Petitioner's response "was to admit defeat,

throw in the towel and waive a jury in violation of Mississippi law and simply ask to be put to

death. The trial court too happily simply complied rather than make a meaningful inquiry as to

the true motivations of Petitioner." (Pet. 103, ¶¶ 410-11).

Petitioner presented this claim on direct appeal, where the Mississippi Supreme Court found Petitioner was not entitled to a psychological expert to aid in the development of mitigating evidence. *Bishop I*, 812 So.2d at 940. The court determined that the circuit court denied Petitioner's motion for an independent psychological expert as it had previously granted Petitioner's motion for a competency evaluation. *Id.* at 939. The court found that the report from the State Hospital was discussed at hearing on the motion, where the trial court noted Petitioner was competent to stand trial. *Id.* The court noted that there appeared to be no issue as to the findings in the report, and that insanity was not asserted by Petitioner as a defense. *Id.* The court found that "[a] defendant is not entitled to a psychological expert where he has not raised insanity as a defense or where the State does not plan to submit psychological evidence against the defendant." *Id.*[15]

Respondents assert that Petitioner was not entitled to an expert to assist in the development of mitigating evidence, and therefore, he has no valid *Ake* claim. (Answer 67). Respondents assert that there is no authority for Petitioner's claim, and that any other conclusion would require this Court to create a new rule in violation of the doctrine in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (prohibiting retroactive application of new constitutional rules on collateral review and defining "new rule" as one "impos[ing] a new obligation on the States or the Federal Government" or one "not dictated by precedent existing at the time the defendant's conviction became final". Respondents contend that there was no

---

[15] The Mississippi Supreme Court also noted the only evidence before the trial court at the time counsel was heard on the motion was that Petitioner suffered from some psychological problems that had existed since childhood. *Id.* at n.5.

indication to the trial court that Petitioner's sanity would be a significant factor at trial, nor did the State seek to present psychiatric evidence at sentencing. (Answer 67). Respondents also argue that Petitioner did not present the Mississippi Supreme Court with evidence to demonstrate there was psychological mitigating evidence to be found. (Answer 69).

In *Ake*, the United States Supreme Court held that a defendant is entitled to the appointment of a psychiatric expert: (1) "when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial" and (2) "in the context of a capital sentencing proceeding, when the State presents psychiatric evidence of the defendant's future dangerousness." 470 U.S. at 83, 105 S.Ct. at 1087. In this instance, Petitioner was found competent to stand trial, and his counsel indicated to the trial court that a psychological expert was needed to aid in the development of mitigating evidence. Petitioner did not present to the trial court an insanity defense, nor did the State present evidence of future dangerousness.

Although not crucial to the disposition of this issue, the Court notes that Petitioner had access to an investigator to help him prepare his defense, and Petitioner refused to allow the presentation of evidence in mitigation. (Trial Tr. vol. 3, 105, lines 19-28; Post-Conviction Pleadings Vol. 2, "Response to Petition for Post-Conviction Relief," Ex. A & B). At the time of Petitioner's omnibus hearing, the only evidence before the trial court which indicated that Petitioner might need the services of a psychiatric expert was his counsel's statement that Petitioner had suffered from emotional problems since childhood. There was evidence before the trial court that Petitioner was competent to stand trial, and the court had no indication that the State intended to introduce evidence of Petitioner's future dangerousness.

Petitioner has not demonstrated that he had an entitlement under *Ake* to a psychiatric expert for the purpose of preparing a case in mitigation at trial. *See Moore v. Johnson*, 225 F.3d 495, 502-03 (5th Cir. 2000), citing *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993) (defendant requesting assistance of non-psychiatric expert must demonstrate "more than the mere possibility of assistance" by demonstrating evidence provided "is both critical to the conviction and subject to varying expert opinion."). Inasmuch as Petitioner has not demonstrated that his request for assistance met the *Ake* standard, this Court cannot determine that the decision of the Mississippi Supreme Court was contrary to, or involved an unreasonable application of, clearly established federal law. Petitioner is entitled to no relief on this claim.

IX. **Petitioner Was Denied His Constitutional Rights to Due Process and Equal Protection and Rights Guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution Where the Imposition of the Death Penalty Violates the United States Supreme Court's Decisions in *Tison v. Arizona*.**

In sentencing Petitioner to death, the trial court ruled:

The court finds from the evidence beyond a reasonable doubt that the following facts existed at the time of the commission of the capital murder charged in the indictment: that the defendant, Dale Leo Bishop, contemplated that lethal force would be employed; next, the Court finds the aggravating circumstance of the capital murder being especially heinous, atrocious, and cruel exists beyond a reasonable doubt and is sufficient to impose the death penalty; and that there are insufficient mitigating circumstances to outweigh the aggravating circumstance; and further finds that the defendant should suffer death as to the indictment.

(Trial Tr. vol. 5, 348-49, Feb. 4, 2000).

In his federal habeas petition, Petitioner asserts he was eligible for the death penalty based solely on the fact that a murder was committed in conjunction with a kidnapping, and that the statutes under which he was convicted are insufficient to appropriately narrow the death penalty.

(Pet. 108-09).[16] Petitioner argues that the decisions of the United States Supreme Court in *Enmund v. Florida*, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) and *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) dictate that the death penalty may not be imposed on a person aiding or abetting a felony murder unless that person killed, attempted to kill, intended a killing take place, or intended lethal force be used, and that these culpability factors are satisfied if the defendant was a major participant "in the felony committed combined with reckless indifference to human life." (Pet. 106-07, ¶¶ 422, 423) In sentencing Petitioner to death, the trial court determined that Petitioner "contemplated that lethal force would be employed." Petitioner argues this finding is insufficient to meet the intent requirements of *Tison*. (Pet. 110). In support of his argument, Petitioner points to case law where the Mississippi Supreme Court has determined that "contemplate" means a type of "contingent intent" which encompasses the planning of force that carries a substantial probability of being lethal. (Pet. 110-111). Petitioner asserts that the trial court relied on "contemplation" alone, such that his constitutional rights were violated.[17]

_____

[16] Petitioner points to three partial jury instructions in support of his argument. First, the jury was instructed that the "killing of a human being without the authority of law by any means or any manner shall be capital murder when done with or without any design to effect the death by any person engaged in the commission of the crime of kidnapping." (Trial Tr. vol. 5, 307-08). Second, the jury was instructed that "any person who shall without lawful authority forcibly seize and confine any other person or shall inveigle or kidnap any other person with intent to cause such person to be secretly confined or imprisoned against his will has committed the crime of kidnapping." (Trial Tr. vol. 5, 308). Finally, the aiding and abetting instruction instructed the jurors that "each person present at the time of or consenting to and encouraging, aiding, or assisting in any material manner in the commission of a crime, or knowingly and willfully doing any act which is an ingredient in the crime, is as much a principal as if he had with his own hands committed the whole offense." (Trial Tr. vol. 5, 307).

[17] Petitioner also asserts that the Mississippi Supreme Court never directly addressed his claim on direct appeal, inasmuch as it only discussed *Enmund* in determining Petitioner's death sentence was not disproportionate. (Pet. 106). Respondents contend that if the issue was not

Respondents note that *Tison* was concerned with the Arizona Supreme Court's definition of "'intent to kill' as a species of foreseeability." (Answer 71, citing *Tison*, 481 U.S. at 150-51, 107 S.Ct. at 1684). Respondents assert that *Tison* did not disturb the "intent to kill" culpability factors of *Enmund*; rather, it created another category of culpability that would support a finding that a death sentence was warranted. (Answer 71). Respondents assert that *Tison* addressed "whether the Eighth Amendment prohibits the death penalty in the intermediate case of the defendant whose participation is major and whose mental state is one of reckless indifference to the value of human life." (Answer 72, 74, citing *Tison*, 481 U.S. at 152, 107 S.Ct. at 1685). The Court concluded that it did not. *Tison*, 481 U.S. at 152, 107 S.Ct. at 1685.

On direct appeal, the Mississippi Supreme Court considered whether Petitioner's sentence of death was disproportionate to the penalty imposed in similar cases, and the court noted that "[t]he death penalty cannot be given to an aider and abettor who has not killed, attempted to kill, or contemplated that life would be taken." *Bishop I*, 812 So.2d at 948. The court found that Petitioner contemplated that lethal force would be used and that the sentence was not disproportionate. *Id.* at 949. In reaching its conclusion, the court noted that Petitioner held the victim as he was being struck and chased him down and brought him back to Jessie. *Id.* at 948-49. The court determined Petitioner took "an active role in the killing" sufficient to justify a sentence of death. *Id.* at 949. Petitioner raised this claim in his post-conviction proceedings, and the court

---

fairly addressed, it is because Petitioner did not then present the arguments he now makes in his federal petition. (Answer 70). The Court notes that Petitioner's argument on direct appeal was framed as whether "[t]he trial court erred in imposing the death penalty, disproportionately to this defendant, and without sufficient proof of 'contemplation of lethal force.'" (State Pleadings, No.: 2000-DP-00341, 21). The Mississippi Supreme Court addressed the argument presented. *See Bishop I*, 812 So.2d at 948-49.

considered Petitioner's argument that "contemplation" of lethal force in a crime was insufficient where Petitioner "was not a major participant who showed a reckless indifference to the killing." *Bishop II*, 882 So.2d at 147. The court noted that it rejected the same argument on direct appeal, and the court stated:

> Bishop was an active participant in Gentry's murder. He knew that the kidnapping was committed in order to teach Gentry a lesson. He held Gentry down while another man hit Gentry in the head with a hammer. The beating lasted long enough for Bishop to finish one beer, to ask another person to hold Gentry, to go to the car to retrieve another, and then to come back. When Gentry freed himself and ran, Bishop chased him, caught him and brought him back for the beating to continue. The beating was so severe that it was necessary for Bishop to dislodge the hammer from Gentry's throat.

*Bishop II*, 882 So.2d at 148.

The court determined, based on the evidence, that this case was not one in which the felon was a minor participant who merely contemplated that lethal force might be used, but was a case in which Petitioner's actions showed reckless indifference to the murder. *Id.* at 148. The court noted Petitioner's additional argument that the evidence was insufficient to establish that he had contemplated that lethal force would be used, and it held the issue res judicata and barred from relitigation. *Id.*

In *Tison*, the United States Supreme Court addressed whether a death sentence is a constitutionally permissible punishment for participants in a felony in which a murder takes place. Prior to *Tison*, the Court in *Enmund* determined that a death sentence is not properly imposed against an offender who had no culpable mental state and was not at the scene when the murder occurred, but that a death sentence could be imposed against an offender who "actually killed, attempted to kill, or intended to kill." *Tison*, 481 U.S. at 149, 150, 107 S.Ct. at 1684. Noting that

the Tison brothers did not fall into the category of offenders for which *Enmund* "explicitly" found the death penalty permissible, nor were they outside of the category of offenders which *Enmund* found the death penalty disproportionate, the Court stated the facts indicated "that they both subjectively appreciated that their acts were likely to result in the taking of innocent life." *Id.* at 152, 107 S.Ct. at 1685. The Court held that the "reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result." *Id.* at 157-58, 107 S.Ct. at 1688. The Court noted the Tison brothers were "actively involved in every element" of the crime, physically present during the criminal activity, and that they sought to evade the authorities. *Id.* The Court determined it was not constitutionally required that an "intent to kill" be present in order to impose capital punishment and held "that major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirements." *Id.*

In the instant case, Petitioner was active in planning the underlying felony and he provided the weapon with which Gentry was beaten to death. Petitioner watched as Gentry was struck more than 23 times with the murder weapon, he held Gentry upright while he was beaten, he helped to try to conceal the body, and he fled from authorities. The determination of the Mississippi Supreme Court that Petitioner's actions evinced a reckless disregard for human life is not disputed by the arguments here presented. Petitioner has failed to meet his burden of demonstrating that the decision of the Mississippi Supreme Court was contrary to, or involved an unreasonable application of, the precedent set forth in *Tison*. As Petitioner has also failed to demonstrate that the Mississippi

Supreme Court reached a decision based on unreasonable factual determinations in light of the

evidence presented, he is not entitled to relief on this claim.

**X.      Petitioner Was Denied His Constitutional Rights to Due Process and Equal Protection and Rights Guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution Where it is Unlawful to Execute a Person Who is Mentally Ill.**

Petitioner asserts he is mentally retarded and that his execution would be unconstitutional

pursuant to the decision of the United States Supreme Court in *Atkins v. Virginia*, 536 U.S. 304, 122

S.Ct. 2242, 153 L.Ed.2d 335 (2002), which bars the execution of mentally retarded persons. While

the *Atkins* Court left it up to the individual states to develop ways of enforcing the restriction on

executing mentally retarded persons, the Court cited the American Association on Mental

Retardation and American Psychiatric Association definitions of mental retardation in its opinion.

Those definitions, as cited in *Atkins*, read:

> " *Mental retardation* refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18." Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed.1992).

> The American Psychiatric Association's definition is similar: "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system." Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed.2000). "Mild" mental retardation is typically

used to describe people with an IQ level of 50-55 to approximately 70. *Id*., at 42-43.

*Id.* at 309 n.3, 122 S.Ct. at 2245.

The Mississippi Supreme Court considered Petitioner's *Atkins* claim on post-conviction review, where it determined that "the proof in this record does not support Bishop's claim of being mentally retarded as to require a remand to the trial court for an *Atkins* hearing." *Bishop II*, 882 So.2d at 151. The court cited *Chase v. State*, 873 So.2d 1013 (Miss. 2004), in which the Mississippi Supreme Court set forth the procedure to be followed by trial courts in determining whether an *Atkins* hearing is warranted, and noted that State procedure requires a post-conviction relief applicant to produce an expert opinion that: (1) the applicant's IQ is 75 or below; and (2) that there is a reasonable belief that the applicant is, or will be found upon further testing, mentally retarded. *Id.* at 1029. For cases already pending at the time *Chase* was decided, the court noted that a hearing may be held without requiring an affidavit in instances where the record contains a qualified opinion that the applicant is mentally retarded. *Bishop* II, 882 So.2d at 151. The court determined that school records and affidavits were not sufficient to entitle Petitioner to a hearing but determined Petitioner could obtain a hearing by providing the court with an affidavit that complied with *Chase*.[18] *Id.*

---

[18] The court in *Chase* set forth the requirements for adjudicating a person mentally retarded, which is an inquiry distinct from the issue of whether the defendant is entitled to an evidentiary hearing. For purposes of adjudicating someone mentally retarded, the court stated:

We hold that no defendant may be adjudged mentally retarded for purposes of the Eighth Amendment, unless such defendant produces, at a minimum, an expert who expresses an opinion, to a reasonable degree of certainty, that: 1. The defendant is mentally retarded, as that term is defined by the American Association on Mental Retardation and/or The American Psychiatric Association; 2. The defendant has completed the Minnesota Multiphasic Personality Inventory

Respondents assert that Petitioner's claim is unexhausted for failing to submit to the Mississippi Supreme Court an affidavit in compliance with *Chase*. (Answer 75). Alternatively, Respondents argue the claim is without merit, as there is no indication before the Court that Petitioner is mentally retarded. (Answer 76).

In his federal habeas petition, Petitioner frames the facts supporting his claim as follows:

449.  Attached to Bishop's petition for post-conviction relief were certified copies of school records provided by academicians who possessed the requisite first-hand knowledge of the relevant facts in support of Petitioner's mental retardation claim.

450.  Based on the relevant and material facts provided by way of supporting affidavits of Petitioner's immediate family members, sufficient facts were alleged to have been presented to state a *prima facie* claim of Petitioner's mental retardation as defined by the standards developed by the American Association on Mental Retardation (AAMR).  Deficiencies in at least two or more adaptive skill areas, combined with Petitioner's acceptance in Special Education classes during his early school years together with the requisite I.Q., evidence a condition of mental retardation with onset prior to age eighteen (18) years.  (Pet. 114, ¶¶  449, 450).

As a preliminary matter, the Court notes that Petitioner has attached nothing to his federal habeas petition to provide factual support to his claim, and the claim itself does not contain a qualified opinion that Petitioner is mentally retarded.  The instant petition states that Petitioner was enrolled in Special Education classes, but it fails to provide anything other than a conclusory argument that Petitioner has made a *prima facie* showing of mental retardation.  Petitioner asks this Court to hold a hearing as he presented "some evidence of mental retardation," but he cites to no factual support or case law which would indicate he is entitled to a hearing on the proof submitted.

A review of the record reveals that Petitioner's school records indicate that Petitioner was

- II (MMPI-II) and/or other similar tests, and the defendant is not malingering.

*Chase*, 873 So.2d at 1029.

twice administered the Wechsler Intelligence Scale for Children - Revised ("WISC-R") while he was enrolled in school. In 1985, at age eleven, he obtained a full-scale IQ score of 100 on the WISC-R. In 1988, at age fourteen, he obtained a full-scale IQ score of 92. (Post-Conviction Pleadings vol. I, "Petition for Post-Conviction Relief," Ex. 5). While IQ does not, by itself, determine the presence or absence of mental retardation, these scores do not indicate that Petitioner suffers from "significant subaverage intellectual functioning," which is one of the three criterion required to make a diagnosis of mental retardation. *See* Diagnostic and Statistical Manual of Mental Disorders, Text Revision, 41 (4th ed. 2000) ("Significantly subaverage intellectual functioning is defined as an IQ of about 70 or below."); *see also Atkins*, 536 U.S. 304, 309 n.5 ("It is estimated that between 1 and 3 percent of the population has an IQ between 70 and 75 or lower, which is typically considered the cutoff IQ score for the intellectual functioning prong of the mental retardation definition.") (citations omitted).

The affidavits and records filed among the post-conviction pleadings at the State level indicate Petitioner has a history of mental problems. (Post-Conviction Pleadings vol. II, "Reply to State's Response to Petition for Post-Conviction Relief," Ex. 8, 10, 11).[19] Petitioner's school records illustrate Petitioner suffered from mental problems, but those records do not indicate the presence of mental retardation, either as a cause of the difficulties, or existing along with another mental disorder. For example, a February 7, 1985, referral report by school staff and administrations recommended Petitioner receive a special services assessment for "emotional disturbance." A Harris County Department of Education Psychology Eligibility Report notes

---

[19] The Court notes that these affidavits were struck from the State court record by the Mississippi Supreme Court for Petitioner's failure to comply with statutory pleading requirements. *Bishop II*, 882 So.2d at 156.

Petitioner suffered from "Dysthmic Disorder" and "Oppositional Behavior." A Humble

Independent School District report, completed April 16, 1988, states that Petitioner's "intellectual

functioning is not in the retarded range" and notes his learning was being disrupted by his

"oppositional behavior." Similarly, an Individual Education Plan ("IEP") Report review from 1986

cites Petitioner's intelligence range as "normal or above." Finally, a 1988 report from the Special

Education Department of the Humble School District indicates Petitioner was enrolled in Special

Education classes on the basis of emotional disturbance. (Post-Conviction Pleadings vol. I,

"Petition for Post-Conviction Relief," Ex. 5).

Whatever portrait these records might paint, they are not indicative of a person suffering

from mental retardation within the meaning of *Atkins*. The Mississippi Supreme Court was not

unreasonable in refusing to grant a hearing when Petitioner came forth with, as he states it, "some

evidence" of mental retardation. The Mississippi Supreme Court has clearly laid out what is

required to receive an evidentiary hearing on an *Atkins* claim, and Petitioner failed to comply with

those requirements. Moreover, Petitioner does not appear to have presented the court with any

evidence that would indicate he suffers from mental retardation. In the absence of a need to develop

material facts, Petitioner had no entitlement to a hearing on the issue. *See, e.g., McDonald v.

Johnson*, 139 F.3d 1056, 1060 (5ᵗʰ Cir. 1998). Petitioner has not met his burden of demonstrating

the Mississippi Supreme Court reached a decision contrary to, or involving an unreasonable

application of the precedent established in *Atkins*, nor does he demonstrate that the court made an

unreasonable determination of facts based on the record before it. Therefore, Petitioner has not

demonstrated an entitlement to relief on this claim.

**XI.     Petitioner Was Denied His Constitutional Rights to Due Process and Equal Protection and Rights Guaranteed by the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution Where the Petitioner's Sentence is Disproportionate to that of His More Culpable Co-Defendant.**

Petitioner argues that his sentence of death is disproportionate to that of Jessie Johnson, as Jessie struck all of the blows that actually killed Gentry.  (Pet. 117, ¶ 459).  Petitioner contends that the evidence in this case is insufficient to demonstrate Petitioner contemplated that lethal force would be used in the attack against Gentry, and that Mississippi's statutorily mandated proportionality review requires his death sentence to be set aside.  (Pet. 119-120).[20]  Petitioner argues that the Mississippi Supreme Court conceded that the only *Enmund* factor found by the trial court was that Petitioner "contemplated lethal force," and that "[s]tate law clearly mandates a finding of that factor alone is legally insufficient to undergird a sentence of death." (Pet. 123).[21] Petitioner further argues that the law established by the United States Supreme Court prohibits the re-weighing of factual findings made at trial.  (Pet. 124, ¶ 480).

On direct review, the Mississippi Supreme Court held that Petitioner's sentence was not disproportionate, stating:

---

[20] Miss. Code Ann. § 99-19-105 (3)(c) requires the Mississippi Supreme Court to determine "whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."

[21] Petitioner cites to *Randall v. State*, 806 So.2d 185 (Miss. 2001), where the court found the defendant's death sentence disproportionate.  Randall was one of five defendants who robbed a victim who was killed during the course of the robbery.  It was not proved which defendant actually killed the victim, and the jury found only that Randall had contemplated that lethal force would be employed.  *Id.* at 233-34.  There, the court noted that the finder of fact must find some "pre-crime" or "contingent intent" plan that establishes more than tort foresseability in order to satisfy the requirement of *Enmund*.  *Id.* at 233.

The record shows that, after Gentry had been hit in the head with the hammer for the first time, Bishop chased after him and brought him back. When Bishop saw Gentry hit with the hammer he knew deadly force was being used. When he ran Gentry down and held Gentry as he was being struck by Jessie, he became more of a principal in the crime. A jury could have easily found that Bishop killed, intended to kill, or at least contemplated that deadly force would be used. This case is not like a robbery where someone killed on impulse. Bishop took an active role in the killing.

*Bishop I*, 812 So.2d at 948-49.

On post-conviction review, the Mississippi Supreme Court again considered Petitioner's argument that his death sentence was disproportionate, and the court determined the issue was procedurally barred, as it was resolved against Petitioner on direct review. *Bishop II*, 882 So.2d at 153. Notwithstanding the bar, the court determined Petitioner's actions were essentially the same as the defendant's in *Leatherwood v. State*, 435 So.2d 645, 655-57 (Miss. 1983), where the Mississippi Supreme Court found a death sentence not disproportionate for a defendant who was not "the triggerman," where the defendant "planned, schemed, and ultimately physically subdued the victim . . . while another stabbed and bludgeoned the victim to death." *Id.* at 153.

Respondents assert that the trial judge made an explicit finding that Petitioner contemplated lethal force would be employed, and that Mississippi law provides that a death sentence may not be returned against a defendant unless he or she actually killed, attempted to kill, intended that a killing take place, or contemplated that lethal force would be employed. (Answer 79, referencing Miss. Code Ann. § 99-19-101(7)). Respondents assert that both the trial and appellate courts made a finding of intent in this case, and that the evidence is sufficient to demonstrate Petitioner's active role in both the kidnapping and murder. (Answer 80). Therefore, Respondents argue, Petitioner must overcome by clear and convincing evidence the factual finding that Petitioner contemplated lethal force would be employed in order to succeed on his claim. (Answer 81). Respondents also

argue that a proportionality review is not required by Supreme Court precedent, so this issue is not cognizable in federal habeas review. (Answer 81).

A proportionality review of Petitioner's sentence is not constitutionally required. *See Pulley v. Harris*, 465 U.S. 37, 43-44, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Therefore, the decision that Petitioner's sentence is not disproportionate is not contrary to, nor does it involve an unreasonable application of, clearly established federal law. Where a state procedure sufficiently guides the sentencer to avoid the arbitrary or capricious imposition of a death sentence, a court is not required to look behind the state court's finding of proportionality. *See Walton v. Arizona*, 497 U.S. 639, 655-56, 110 S.Ct. 3057, 3058, 111 L.Ed.2d 511 (1990). In Petitioner's case, the trial judge made an explicit finding that Petitioner possessed a culpable mental state prior to imposing a sentence of death, and the Mississippi Supreme Court determined that finding was correct. Petitioner has not overcome the factual finding as to his culpability by clear and convincing evidence. *See Clark v. Johnson*, 227 F.3d 273, 281 (5th Cir. 2000). As discussed previously, Petitioner took an active role in planning and executing the kidnapping, he chased Gentry down and brought him back to the vehicle, and he held Gentry while the blows that led to his death were inflicted. Petitioner has not sustained his burden with regard to this issue, and he is entitled to no relief on this claim.

**XII.** **Petitioner Was Denied His Constitutional Rights to Due Process and Equal Protection and Rights Guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution Where Petitioner Has Been Subjected to the "Death-Row Phenomenon" and the Execution of Petitioner in this Case Serves No Legitimate Penological End.**

Petitioner's argument under this claim of error is essentially that the lengthy delay in carrying out his sentence leads to mental anguish, serves no retributive or deterrent purpose, and

violates his right to be free from cruel and unusual punishment. Petitioner acknowledges that this issue was not previously raised in State court and that the Supreme Court has never addressed the issue. (Pet. 126-131).

There is no clearly established law that would support Petitioner's claim. The Supreme Court of the United States has never held that execution after years spent on death-row violates an inmate's constitutional rights. *See Foster v. Florida*, 537 U.S. 990, 993, 123 S.Ct. 470, 154 L.Ed.2d 359 (2000) (Bryer, J., dissenting from denial of certiorari) (arguing that imposition of death penalty might violate Eighth Amendment where courts vacated petitioner's sentence but later withdrew relief); *Knight v. Florida*, 528 U.S. 990, 993-94, 120 S.Ct. 459, 145 L.Ed.2d 370 (1999) (Bryer, J., dissenting from denial of certiorari) (arguing imposition of death penalty might violate Eighth Amendment where petitioner spent twenty-four years on death row before Eleventh Circuit found Florida's sentencing procedure defective and State waited seven years to hold new sentencing hearing); *Lackey v. Texas*, 514 U.S. 1045, 1045-47, 115 S.Ct. 1421, 131 L.Ed2d 304 (1995) (Stevents, J., respecting denial of certorari) (questioning whether policies of retribution and deterrence served after inmate spent seventeen years on death row). To hold otherwise would be to create a new rule of law in violation of *Teague v. Lane*, 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (prohibiting retroactive application of new constitutional rules on collateral review and defining "new rule" as one "impos[ing] a new obligation on the States or the Federal Government" or one "not dictated by precedent existing at the time the defendant's conviction became final"). Moreover, Petitioner's claim has never been presented in State court, and it is procedurally barred and otherwise without merit. *See Ogan v. Cockrell*, 297 F.3d 349, 356 (5th Cir. 2002) (claims not first presented to state court barred absent showing of cause and prejudice); *see*

*also White v. Johnson*, 79 F.3d 432, 439 (5th Cir. 1996) ("The state's interest in deterrence and swift punishment must compete with its interest in insuring that those who are executed receive fair trials with constitutionally mandated safeguards. . . .White has benefitted from this careful and meticulous process and cannot now complain that the expensive and laborious process of habeas corpus appeals which exists to protect him has violated other of his rights.").  Petitioner is not entitled to relief on this issue.

**XIII.    Petitioner Was Denied His Constitutional Rights to Due Process and Equal Protection and Rights Guaranteed By the Fifth, Sixth, Eighth, Ninth, and Fourteenth Amendments to the United States Constitution by the Cumulative Effect of the Constitutional Violation Set Forth in Claims I Through XII.**

Petitioner asserts that the errors in his trial, when considered cumulatively, amount to a denial of due process.  (Pet. 132).  Petitioner asserts the fairness of his trial cannot be determined on its outcome, and he seeks habeas relief from the determinations and applications made by the Mississippi Supreme Court.  The Mississippi Supreme Court considered this claim on post-conviction review, and the court found that no reversible error was committed at trial and denied relief.  *Bishop II*, 882 So.2d at 154.

The Fifth Circuit has stated that the cumulative error theory: (1) applies only to actual errors committed at the trial level; (2) applies only to those errors which have not been procedurally defaulted; and (3) applies only to errors of constitutional dimension, i.e., those which "infused the trial with unfairness as to deny due process of law."  *Derden v. McNeel*, 978 F.2d 1453, 1458 (5th Cir. 1992) (en banc).  The Court finds Petitioner has not demonstrated the existence of any errors of constitutional dimension and determines Petitioner is not entitled to relief on this claim.

## Conclusion

For the reasons set forth above, Petitioner has not demonstrated that the denial of his State petition was contrary to, or involved an unreasonable application of, clearly established federal law, nor has the denial been shown to have been based on an unreasonable determination of facts in light of the evidence presented in the State court proceedings. Accordingly, the Court **DENIES** federal habeas relief, and the instant petition shall be dismissed with prejudice. A separate order in accordance with this opinion shall issue today.

**THIS** the 16th day of August, 2007.


**/s/ Michael P. Mills**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**